Astrid L. PORTELA–GONZALEZ, et al., Plaintiffs, Appellants,

v.

SECRETARY OF THE NAVY, et al., Defendants, Appellees.

No. 96–1460.

United States Court of Appeals, First Circuit.

Heard March 5, 1997.

Decided March 26, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied May 27, 1997.

Alex Gonzalez, San Juan, PR, with whom Gonzalez & Vilella was on brief, for Plaintiffs, Appellants.

Isabèl Muñoz Acosta, Assistant United States Attorney, Guaynabo, PR, with whom Guillermo Gil, United States Attorney, was on brief, for Defendants, Appellees.

Before TORRUELLA, Chief Judge, SELYA and STAHL, Circuit Judges.

SELYA, Circuit Judge.

In this appeal, plaintiff-appellant Astrid L. Portela–Gonzalez (Portela) challenges a summary judgment entered in favor of the Navy.[1] Although our reasoning differs in

---

1. Portela's husband, Juan Enrique Del Valle, and their conjugal partnership are also plaintiffs; the Secretary of the Navy and the Naval Resale and Services Support Office (NRSSO) are additional defendants. For simplicity's sake, we treat the case as involving only Portela and the Navy.

one salient respect from that employed by the court below, we affirm the judgment. *See Hachikian v. FDIC*, 96 F.3d 502, 504 (1st Cir.1996) (explaining that an appellate court is not committed to the trial court's rationale, but may affirm on any alternative ground made manifest by the record).

## I. BACKGROUND

The facts essential to our review are largely uncontested. Portela worked for nearly three decades as a civilian employee at the Roosevelt Roads Naval Station. From 1985 forward, she occupied the position of sales manager at the Navy Exchange. She had an unblemished employment record and achieved consistently high performance ratings.

On December 14, 1989, Portela placed 28 articles of clothing on layaway at the Exchange, 25 of which were clearance sale items (known colloquially as "red tag" items). The anticipated purchase price of the merchandise was $484.10. When the Exchange slashed the prices of all red tag items even more drastically during the post-Christmas lull, Portela spied an opportunity for increased savings, canceled her layaway arrangement (paying a $5.00 penalty), and simultaneously repurchased the articles she had removed from layaway status for a price of $330.79. Portela contends that these machinations did not transgress any policy, rule, or regulation of the Exchange; the Navy contends otherwise.

## II. THE AFTERMATH

On April 9, 1990, L.H. Arcement, Jr., the Officer in Charge (OIC) of the Navy Exchange, suspended Portela without pay pending anticipated disciplinary action. On May 29, Arcement notified Portela that she would be terminated for "applying an unauthorized 40% price reduction to red tagged clothing items you had placed on layaway in violation of the Exchange's layaway policy, resulting in a loss to the Exchange of $197.32."[2] Pursuant to the controlling administrative procedure, contained in a Secretary of the Navy

Instruction (SECNAVINST), the letter informed Portela of the charges against her and outlined her procedural rights.

Portela contested the proposed disciplinary action. On June 22, 1990, the OIC overrode Portela's grievance and terminated her employment as of July 3, 1990. The Navy advised Portela of her right to appeal this decision and she proceeded to do so. Her first appeal was heard *pro forma* by the OIC who, not surprisingly, affirmed his original determination. Her second appeal culminated in a full evidentiary hearing, following which Michael F. O'Brien, the Commanding Officer of the Roosevelt Roads Naval Station, upheld her termination.

Portela pursued the appellate process to the next level. On March 25, 1991, Rear Admiral H.D. Weatherson, Commander of the NRSSO, headquartered at Staten Island, New York, affirmed her termination. This decision informed Portela of her right to take a final administrative appeal to the Deputy Assistant Secretary of the Navy, Civilian Personnel Policy, Equal Employment Opportunity Office, in Washington, D.C. Rather than pursue this fourth level of administrative redress, Portela filed suit.

After some preliminary skirmishing, not relevant here, the district court addressed the Navy's motion for summary judgment. The court ruled that Portela had failed to exhaust available administrative remedies but nonetheless reached the merits of her suit in the exercise of its perceived discretion. *See Portela Gonzalez v. Secretary of Navy*, 913 F.Supp. 122, 126–28 (D.P.R.1996). Portela's victory proved ephemeral, however, as the court concluded that the Navy's actions were neither arbitrary nor capricious. *See id.* at 128. This appeal ensued.

## III. DISCUSSION

We agree with the district court that Portela impermissibly failed to exhaust her administrative remedies. We disagree, however, that the court had discretion, in the

---

2. While simple arithmetic indicates that this figure is in the vicinity of 40% of the original purchase price, the record sheds no further light on its genesis. We need not probe the point, however, because Portela does not challenge the amount.

circumstances of this case, to relieve her of the onus of her omission.

### A. *The Exhaustion Doctrine.*

■ Starkly contoured, the exhaustion doctrine holds that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). In practice, the doctrine has softer edges than this language implies. *See* Kenneth Culp Davis & Richard J. Pierce, Jr., II *Administrative Law Treatise* § 15.2, at 307 (3d ed.1994). Although exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress, *see McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992), courts have more latitude in dealing with exhaustion questions when Congress has remained silent, *see Darby v. Cisneros*, 509 U.S. 137, 153–54, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993); *McCarthy*, 503 U.S. at 144, 112 S.Ct. at 1086. In such purlieus, the court of first instance possesses a *modicum* of discretion to relax the exhaustion requirement. *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir.1997).

The Court's opinion in *McCarthy* is integral to an understanding of the parameters of this discretion. Although recognizing that the exhaustion doctrine ordinarily "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and, thus, should customarily be enforced, the Court identified "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *McCarthy*, 503 U.S. at 145, 146, 112 S.Ct. at 1086, 1087.

■ First, a court may consider relaxing the rule when unreasonable or indefinite delay threatens unduly to prejudice the subsequent bringing of a judicial action. *See id.* at 146–47, 112 S.Ct. at 1087–88. And, relatedly, if the situation is such that "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim," exhaustion may be excused even though "the administrative decisionmaking schedule is otherwise reasonable and definite." *Id.* at 147, 112 S.Ct. at 1087.

■ Second, *McCarthy* acknowledges that it sometimes may be inappropriate for a court to require exhaustion if a substantial doubt exists about whether the agency is empowered to grant meaningful redress. *See id.* at 147–48, 154, 112 S.Ct. at 1087–88, 1091; *see also Gibson v. Berryhill*, 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 1696 n. 14, 36 L.Ed.2d 488 (1973). An agency, for example, may lack authority to grant the type of relief requested. *See, e.g., McNeese v. Board of Educ.*, 373 U.S. 668, 675, 83 S.Ct. 1433, 1437–38, 10 L.Ed.2d 622 (1963).

■ Finally, *McCarthy* teaches that the exhaustion rule may be relaxed where there are clear, objectively verifiable indicia of administrative taint. Thus, if the potential decisionmaker is biased or can be shown to have predetermined the issue, failure to exploit an available administrative remedy may be forgiven. *See McCarthy*, 503 U.S. at 148, 112 S.Ct. at 1088.

### B. *Application of the Doctrine.*

■ Congress has excluded Navy Exchange personnel from the strictures of the Administrative Procedure Act, *see* 5 U.S.C. § 2105(c), and has not otherwise mandated that such employees always must exhaust administrative remedies as a condition precedent to suit. Accordingly, Portela's admitted failure to exercise the final level of available administrative review is not necessarily fatal to her claim; the effect of her omission depends instead upon whether the circumstances of her case can justify that omission.

■ **1. *The Availability of Fourth–Level Review.*** We start this phase of our analysis by addressing Portela's halfhearted argument, raised for the first time on appeal, that a fourth level of review was not in fact available to her. The argument is bogus.

The facts are as follows. The original administrative procedure, SECNAVINST 5300.22A, did not mention a fourth level of review. On November 15, 1989, however, the Secretary of the Navy promulgated SEC-

NAVINST 5300.22B, directing subordinate commands to implement it within 120 days. The new regulation (5300.22B) explicitly canceled the old regulation (5300.22A). Nevertheless, on January 24, 1990, the Director, Officer of Civilian Personnel Management, granted an extension to the NRSSO, deferring the effective date of SECNAVINST 5300.22B until July 15, 1990. Thus, the notice of suspension issued to Portela on April 9, 1990, the notice of proposed disciplinary action issued to her on May 29, 1990, and the notice of decision dated June 22, 1990, all referenced SECNAVINST 5300.22A as the controlling regulation.

From that point forward, however, Portela clearly understood—indeed, urged—that SECNAVINST 5300.22B, which unarguably contains a fourth level of administrative review, governed her case. She mentioned it in her second appeal, dated August 12, 1990, and at the ensuing evidentiary hearing her counsel insisted that 5300.22B, rather than 5300.22A, controlled her case. While the hearing officer did not rule on the question, the ultimate decisionmaker at that level (the Commanding Officer of the Roosevelt Roads Naval Station) accepted Portela's argument and reviewed the hearing transcript in accordance with SECNAVINST 5300.22B. Throughout the remainder of the administrative process, both sides proceeded under that regulation.[3]

■ We do not aspire to add hues to a rainbow. By its terms, SECNAVINST 5300.22B applies here. And, moreover, since Portela consistently argued for its application during the latter stages of the administrative process, she cannot now be heard to complain that the agency surrendered to her exhortation. Equitable doctrines of estoppel apply in administrative and judicial fora, *see generally* Davis & Pierce, *supra*, §§ 13.1 to 13.5, and a party cannot take one position in an underlying administrative proceeding and then disclaim it in a subsequent suit arising out of the agency proceedings. *Cf. Patriot Cinemas, Inc. v. General Cinema Corp.*, 834

F.2d 208, 212 (1st Cir.1987) (explaining that the doctrine of judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another").

■ *2. The Futility Exception.* The only question that remains is whether Portela's failure to mount the final rung of the administrative ladder is fatal to the court case. She argued below that the court should excuse her omission, asseverating that a final appeal to the Deputy Assistant Secretary of the Navy would have been a futile gesture because it would have resulted in an automatic affirmance of her dismissal. In theory, this is a good argument. Consistent with the exceptions limned by the *McCarthy* Court, we have recognized the inappropriateness of requiring exhaustion when further agency proceedings would be futile. *See, e.g., Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 190 (1st Cir.1993); *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir.1989); *Ezratty v. Commonwealth of P.R.*, 648 F.2d 770, 774 (1st Cir. 1981).

■ But the futility exception is not available for the asking. Reliance on the exception in a given case must be anchored in demonstrable reality. A pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough to sidetrack the exhaustion rule. *See Christopher W.*, 877 F.2d at 1095–96; *see also Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir.1991) (admonishing that "the mere possibility, or even the probability, that the responsible agency may deny [a] permit should not be enough to trigger the [futility exception]"). Accordingly, "[a]n essential element of the claim of futility ... is that all reasonable possibilities of adequate administrative relief have been effectively foreclosed." *Tucker v. Defense Mapping Agency Hydrographic/Topographic Ctr.*, 607 F.Supp. 1232, 1243 (D.R.I.1985). Indeed, the Seventh Circuit has held that claimants who seek safe harbor under the futility exception "must

---

**3.** We cite two episodes which confirm this conclusion. In her third-level notice of appeal, Portela stated expressly that "[t]his appeal arises under SECNAVINST 5300.22B." By like token, in resolving that appeal adversely to Portela, the NRSSO commandant specifically informed Portela of her right to a fourth-level appeal under SECNAVINST 5300.22B.

show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." *Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 659 (7th Cir.1992).[4]

Portela cannot surmount this hurdle. The claim of futility is merely a self-serving pronouncement in the circumstances of this case. The evidence is uncontradicted that the Deputy Assistant Secretary is an impartial official who has reversed termination decisions affecting Navy Exchange personnel in the past. Though the prognosis for Portela's unused administrative appeal may have been poor and her expectations modest, neither courts nor litigants are allowed to equate pessimism with futility. *See Hodges v. Callaway,* 499 F.2d 417, 424 (5th Cir.1974). Because there is nothing in the record to suggest that Portela's lack of success at the previous levels of review necessarily signified that the final level of review would be an empty gesture, her failure to exhaust an available administrative remedy cannot be overlooked on the ground of futility.

■ *3. The District Court's Rationale.* To this point, we are in agreement with the court below. *See Portela,* 913 F.Supp. at 126–27 (declaring that alleged futility did not excuse Portela's nonexhaustion). After finding the plaintiff's futility argument futile, however, the district judge nonetheless elected to relax the exhaustion requirement "[i]n the interests of minimizing cost and delay in the judicial system and avoiding the waste of resources." *Id.* at 127. The judge reasoned that a perceived waste of resources, in and of itself, can justify excusing nonexhaustion of administrative remedies. We think not.[5]

Were we to adopt the lower court's reasoning, the resulting exception would swallow the exhaustion rule in a single gulp. Once an

aggrieved party has brought suit, forcing her to retreat to *any* unused administrative appeal potentially wastes resources. The Supreme Court has disavowed such a resupinate approach. In *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), the Court explained that a "primary purpose" of the exhaustion doctrine is "the avoidance of premature interruption of the administrative process." Consequently, it is generally inefficient to permit a party to seek judicial recourse without first exhausting her administrative remedies. *See id.* at 194, 89 S.Ct. at 1662–63. Following this train of thought, the Court has concluded that, by and large, concerns regarding efficiency militate in favor of, rather than against, strict application of the exhaustion doctrine. *See McCarthy,* 503 U.S. at 145, 112 S.Ct. at 1086–87; *McKart,* 395 U.S. at 195, 89 S.Ct. at 1663; *see also Ezratty,* 648 F.2d at 774 (acknowledging that the exhaustion doctrine "serves interests of accuracy, efficiency, agency autonomy and judicial economy").

This view is steeped in real-world wisdom. Insisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether. Furthermore, disregarding available administrative processes thrusts parties prematurely into overcrowded courts and weakens an agency's effectiveness by encouraging end-runs around it. *See McCarthy,* 503 U.S. at 145, 112 S.Ct. at 1086–87; *McKart,* 395 U.S. at 195, 89 S.Ct. at 1663.

*4. The Bottom Line.* To sum up, the futility exception is unavailable to Portela and the district court's professed reason for excusing her failure to exhaust administra-

---

**4.** For our part, we are tempted to set the benchmark slightly below absolute certainty, *cf. Gilbert,* 932 F.2d at 61 ("To come within the exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)."), but the case at hand does not require us to choose between these two formulations.

**5.** To be sure, we stated in *Ezratty* that "[s]ometimes to require exhaustion will not only waste resources but also work severe harm upon a litigant." 648 F.2d at 774. Taken in context,

this statement is entirely compatible with the "undue prejudice/irreparable harm" consideration outlined by the *McCarthy* Court in its discussion of the first potential exception to the exhaustion rule. 503 U.S. at 146–47, 112 S.Ct. at 1087–88. In the case at bar, there is no hint that taking an appeal to the Deputy Assistant Secretary would have caused Portela irreparable harm or otherwise seriously prejudiced her rights.

tive remedies neither passes muster on its own terms nor falls within any of the hallmark *McCarthy* exceptions.[6] Those conclusions dictate the result we must reach. The plaintiff left an available administrative remedy untapped and the record in this case, howsoever construed, reveals no sufficiently excusatory circumstances to warrant spurning that remedy.

First, there is no indication that full exhaustion would have caused undue prejudice, irreparable harm, or unusual hardship of any sort. Although Portela had already pursued a fairly lengthy administrative process, it had moved celeritously—the pavane began when the OIC terminated Portela's employment as of July 3, 1990, and ended when the NRSSO, in the person of Rear Admiral Weatherson, denied her penultimate administrative appeal on March 25, 1991—and the Deputy Assistant Secretary would have been required to respond to her final appeal "within 60 calendar days of receipt of the official record." SECNAVINST 5300.22B Ch.V (9)(d)(3). Second, the agency (here, the Navy) was fully capable of granting all the relief that Portela originally sought, namely, reinstatement, reassignment, and quashing the charges against her. Third, there is no meaningful indication of any institutional bias. Fourth, the plaintiff has not identified any other special circumstance warranting relaxation of the exhaustion rule, and our careful perlustration of the record reveals none. It follows that the district court should have dismissed the complaint for failure of the plaintiff to exhaust available administrative remedies.

## IV. CONCLUSION

It may seem hypertechnical to some that a person who believes herself aggrieved by agency action must jump through a series of hoops before she can seek out a judicial forum. But long-recognized concerns regarding agency autonomy and judicial efficiency weigh heavily in favor of requiring complete exhaustion of administrative remedies. When all is said and done, our system of justice depends on litigants' adherence to well-defined rules. Where, as here, a party decides unilaterally to forsake those rules, she does so at her peril.

We need go no further. The short of it is that Portela lacked a legally sufficient reason for leaping prematurely to a judicial venue. Thus, the district court should have dismissed her complaint for failure to exhaust available administrative remedies. In the end, however, the district court's error is of no moment; though the court entered judgment in favor of the Navy on an inappropriate ground, the Navy is nonetheless entitled to judgment.

*Affirmed.*

---

6. We do not suggest that the three exceptions to the exhaustion rule delineated by the *McCarthy* Court comprise an exclusive compendium. But to the extent that other exceptions appropriately may lie, they must be on a par with the exceptions described by the Court. As explained in the text, the record here contains nothing which suggests a plausible basis for a further exception.