United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit



No. 97-1038

GERALD R. SWIRSKY,

Plaintiff, Appellant,

v.

NATIONAL ASSOCIATION OF SECURITIES DEALERS,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT 

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge] 



Before

Selya and Lynch, Circuit Judges, 
and Gibson,* Senior Circuit Judge. 



Gerald A. Phelps for plaintiff-appellant. 
David C. Fixler, with whom Michael Unger and Rubin & Rudman LLP 
were on brief, for defendant-appellee.


August 28, 1997


 

* Hon. John R. Gibson of the Eighth Circuit, sitting by designation.

LYNCH, Circuit Judge. This case presents an issue LYNCH, Circuit Judge. 

of first impression for this circuit concerning whether the

doctrine of exhaustion of administrative remedies applies in

certain actions against the National Association of

Securities Dealers ("NASD"). We hold that it does, in

agreement with the other circuits which have faced this

issue. We therefore affirm the district court's dismissal of

the actions because Mr. Swirsky failed to follow the proper

review process in litigating this dispute.

I. Background

Gerald R. Swirsky worked for Prudential Securities

Inc. as a broker until November of 1992. In November of

1990, Swirsky and Prudential were parties to a NASD

arbitration proceeding ("the Murray Arbitration") brought by

one of Swirsky's customers, who accused them of causing her

to lose money by concentrating her position in a single,

risky stock. The customer was awarded $370,260 in damages

jointly and severally from Prudential and Swirsky and

punitive damages of $50,000 from Prudential. Swirsky lost

his job with Prudential as a result of a comprehensive

management restructuring.

Tucker Anthony hired Swirsky soon after he left

Prudential, and fired him on September 16, 1994. Four days

later, the NASD filed a complaint against Swirsky in

connection with the Murray Arbitration and complaints by two

other former Prudential customers. Prior to the termination

of Swirsky's employment, the NASD informed Tucker Anthony

(according to Swirsky) that if Tucker Anthony continued to

employ Swirsky, Tucker Anthony would be held as a guarantor

of Swirsky's conduct.

To resolve the NASD complaints, Swirsky, while

represented by counsel, executed an Offer of Settlement and

Waiver of Procedural Rights, without admitting any guilt, on

October 21, 1994. Swirsky avers that during the settlement

negotiations he was unaware of the NASD's "threat" to hold

Tucker Anthony liable as Swirsky's guarantor. Swirsky

apparently only learned of this communication through a

letter from the General Counsel of Tucker Anthony dated

February 8, 1995. 

According to the terms of the settlement agreement,

Swirsky was fined $10,000, suspended from association with

any NASD member firm for ten days, and waived all rights to

appeal. The National Business Conduct Committee of the NASD

Board of Governors ("NBCC") approved this settlement

agreement, and the local NASD District Business Conduct

Committee ("DBCC") issued a Decision and Order of Acceptance

of Offer of Settlement on January 9, 1995. The NASD filed

the settlement with the Securities Exchange Commission

("SEC") on March 2, 1995.

-3- 3

Swirsky, represented by different counsel, filed a

Motion to Vacate Decision and Order of Acceptance of Offer of

Settlement with the NBCC on May 2, 1995. Swirsky asserted a

host of claims.2 The NBCC denied Swirsky's motion to vacate

on July 10. Swirsky appealed to the SEC, alleging the same

claims as in his motion to the NBCC. The SEC declined to

review the NBCC decision because Swirsky's motion to vacate

was untimely.3

Swirsky brought suit in federal district court on

October 11, 1995. The district court characterized Swirsky's

complaint as "essentially a collateral attack on a settlement

he has been unable to undo through the established

 

2. Swirsky raised the following claims: tortious
interference with contract; tortious interference with
advantageous relations; fraud; violations of Mass. Gen. L.
ch. 93A; defamation; procedural due process violations under
the United States Constitution and the Constitution of the
Commonwealth of Massachusetts; violations of 42 U.S.C. 
1983; violations of Mass. Gen. L. ch. 12 11H and 11I; and
violations of sections 6(d)(1) and 15A(h)(1) of the Exchange
Act.

3. In a letter dated September 7, 1995, the SEC stated the
following:
Under Section 19(d)(2), an application for review is to
be filed within 30 days after the date notice of the
action is filed with the Commission and received by the
aggrieved person. Even if Swirsky could be considered
aggrieved by a settlement to which he consented, he was
obliged to file an application for review within 30
days of the filing of notice of the action. Swirsky
did not seek Commission review of the action within the
30-day period and has made no showing for the
Commission to consider the extraordinary relief
necessary for a filing outside of the normal time
limits.

-4- 4

administrative process." Memorandum and Order at 1. The

district court dismissed the complaint because Swirsky had

failed to exhaust his administrative remedies. Under the

process established by the Exchange Act, the district court

said, Swirsky should have appealed the adverse SEC decision

in federal circuit court. Swirsky now appeals.

II. The Exchange Act

The Securities Exchange Act of 1934 and its

subsequent amendments create a detailed, comprehensive system

of federal regulation of the securities industry. The

system's foundation is self-regulation by industry

organizations established according to the guidelines of the

Maloney Act. The NASD is a national securities association

registered with the SEC pursuant to the Maloney Act which

provides self-regulation of the over-the-counter securities

market. See 15 U.S.C. 78o-3. 

The Exchange Act mandates a three-tiered process of

both administrative and judicial review of NASD disciplinary

proceedings. At the first level, proceedings are conducted

by the local DBCC with appeal to, and de novo review by, the

NBCC. The Maloney Act prescribes an array of procedural

safeguards to ensure fairness at this first tier of review.

The NASD must "bring specific charges, notify such member or

person of, and give him an opportunity to defend against,

such charges, and keep a record." 15 U.S.C. 78o -3(h)(1). 

-5- 5

The NASD is authorized to impose a number of

sanctions, including censure, fines, suspension, or

prohibition from association with member firms. 15 U.S.C. 

78o-3(b)(7); NASD Rules of Fair Practice, Art. V, 1. In

addition to these specific sanctions, the NASD may impose

"any other fitting sanction deemed appropriate under the

circumstances." Id. Sanctions must be supported by written 

statements specifying the activity that caused the violation,

the specific provision or rule violated, and the reason for

the sanction imposed.

At the second level, the SEC reviews NBCC final

orders de novo. 15 U.S.C. 78s(d). Once the NBCC files its

decision with the SEC, disciplinary respondents have 30 days

to petition the SEC for review. 15 U.S.C. 78s(d)(2). The

SEC can affirm or modify any sanction, or remand to the NASD

for further proceedings. 15 U.S.C. 78s(e). The SEC is

empowered to seek an injunction in district court if the NASD

"is engaged or is about to engage in acts or practices

constituting a violation" of the securities laws. 15 U.S.C.

78u(d). The SEC may "censure or impose limitations upon

the activities, functions and operations" of self-regulatory

organizations (such as the NASD) that violate the Exchange

Act, the rules thereunder, or its own rules. 15 U.S.C. 

78s(h)(1). The SEC may remove any officer or director of a

self-regulatory organization from office if he or she is

-6- 6

found to have violated the rules or abused his or her

position. 15 U.S.C. 78s(g)(2).

The NASD is also subject to extensive, ongoing

oversight and control by the SEC. See United States v. NASD, 

422 U.S. 694, 700-01 n.6 (1975) (The Act "authorizes the SEC

to exercise a significant oversight function over the rules

and activities of the registered associations."). With few

exceptions, the SEC must approve all rules, policies,

practices, and interpretations before they are implemented.

15 U.S.C. 78s(b)(1). Consistent with the requirements of

the Exchange Act, the SEC may abrogate or add rules as it

deems necessary. 15 U.S.C. 78s(b)(3). The SEC may also

suspend or revoke the license of any national securities

organization which fails to enforce compliance with the

Exchange Act, SEC regulations, or the organization's own

rules. 15 U.S.C. 78s(h)(1).

The third tier of the process provides for review

of final SEC orders by the United States Courts of Appeals.

15 U.S.C. 78y(a); see Mister Discount Stockbrokers, Inc. v. 

SEC, 768 F.2d 875, 876 (7th Cir. 1985) (stating that "final 

orders of the Commission are reviewable only in the United

States Courts of Appeals"). Congress believed that this

three-tiered process founded upon self-regulation would

garner several benefits, including "the expertise and

intimate familiarity with complex securities operations which

-7- 7

members of the industry can bring to bear on regulatory

problems, and the informality and flexibility of self-

regulatory procedures." S.Doc. No. 93-13, 93d Cong., 1st

Sess. 149 (1973).

III. The Merits

The Exchange Act creates a comprehensive procedure

to safeguard due process in disciplinary hearings, and for

administrative and judicial review of NASD disciplinary

actions. We agree with other circuits that have considered

the question that the "comprehensiveness of the review

procedure suggests that the doctrine of exhaustion of

administrative remedies should be applied to prevent

circumvention of established procedures." First Jersey 

Securities, Inc. v. Bergen, 605 F.2d 690, 695 (3rd Cir. 

1979). See Merrill Lynch v. NASD, 616 F.2d 1363, 1370 (5th 

Cir. 1980); see also Nassar & Co. v. SEC, 566 F.2d 790, 792 

n.3 (D.C. Cir. 1977); Roach v. Woltmann, 879 F. Supp. 1039, 

1041-42 (C.D. Cal. 1994); Maschler v. National Ass'n of 

Securities Dealers, Inc., 827 F. Supp. 131, 132 (E.D.N.Y. 

1993); Prevatte v. National Ass'n of Securities Dealers, 

Inc., 682 F. Supp. 913, 918 (W.D. Mich. 1988). Because 

Swirsky failed to invoke the third tier of the review

process, the district court lacked subject matter

jurisdiction, and it properly dismissed Swirsky's complaint.

-8- 8

The doctrine of exhaustion of remedies is stated

starkly in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 

41, 50-51 (1938), where the Supreme Court noted the "long

settled rule of judicial administration that no one is

entitled to judicial relief for a supposed or threatened

injury until the prescribed administrative remedy has been

exhausted." (footnote omitted). The central purpose of this

doctrine is "the avoidance of premature interruption of the

administrative process." McKart v. United States, 395 U.S. 

185, 193 (1969). See Portela-Gonzalez v. Secretary of the 

Navy, 109 F.3d 74, 79 (1st Cir. 1997) ("Insisting on 

exhaustion forces parties to take administrative proceedings

seriously, allows administrative agencies an opportunity to

correct their own errors, and potentially avoids the need for

judicial involvement altogether."); Ezratty v. Commonwealth 

of Puerto Rico, 648 F.2d 770, 774 (1st Cir. 1981) (stating 

that "the doctrine serves interests of accuracy, efficiency,

agency autonomy and judicial economy.").

Exhaustion is required if explicitly mandated by

Congress, McCarthy v. Madigan, 503 U.S. 140, 144 (1992), but 

courts may relax this requirement somewhat where Congress is

silent. Darby v. Cisneros, 509 U.S. 137, 153-54 (1993). 

There are "three broad sets of circumstances in which the

interests of the individual weigh heavily against requiring

administrative exhaustion." McCarthy, 503 U.S. at 146. 

-9- 9

These exceptions are when the requirement occasions undue

prejudice to subsequent assertion of a court action; where

the agency is not empowered to grant effective relief; and

when there are clear indicia of agency bias or taint.

McCarthy at 146-48. See Portela-Gonzalez, 109 F.3d at 77 

(1st Cir. 1997). None of these exceptions applyto this case.

Before examining the exceptions to administrative

exhaustion listed above, we refute Swirsky's threshold claim

that he could not appeal the SEC decision because it did not

constitute a "final order." On the contrary, the SEC letter

is an adjudication of Swirsky's motion to vacate the

settlement agreement. The SEC declined to review the NBCC's

decision not to vacate the settlement agreement on the ground

that Swirsky's petition was time-barred. Though based on

procedural grounds, the SEC's ruling on Swirsky's petition is

final, and Swirsky could have appealed this decision.

Swirsky's clearest argument that the exhaustion

doctrine should not apply to this case is rooted in

allegations that the NASD is biased against him. This

argument consists of little more than the assertion that,

because the NASD is the defendant in this action, it could

not possibly provide him with a fair hearing. We do not

believe that this is enough to demonstrate the kind of

-10- 10

thoroughgoing taint which concerned the Supreme Court in

McCarthy.4 The review process here provides for both SEC and 

court of appeals review after the NASD determination, not to

mention review by the NBCC, a separate entity from the DBCC.

Swirsky has not accused the SEC or this court of unacceptable

bias against him. Though it can be unsettling, it is not

uncommon in administrative law for a litigant's case to be

heard in the first instance by the very agency against which

the plaintiff has a complaint. In this case, resort to the

correct appeals procedure would not have been a "futile act."

See Portela-Gonzalez, 109 F.3d at 78-80 (plaintiff required 

to pursue her claim to "the final rung of the administrative

ladder," despite the fact that she had been rebuffed at all

prior stages).

Neither is resort to the proper review process

futile in the sense that Swirsky could not have received the

relief he sought. The SEC has extensive powers to modify,

reverse and enjoin disciplinary actions by the NASD. As the

Third Circuit has said, "Ultimate review by the court of

appeals ensures that constitutional or statutory errors will

not go unremedied." First Jersey Securities, Inc., 605 F.2d 

at 696. See SEC v. Waco Financial, Inc., 751 F.2d 831, 833 

 

4. See McCarthy, 503 U.S. at 148 (citing Houghton v. 
Shafer, 392 U.S. 639, 640 (1968), where administrative review 
procedure culminated with the Attorney General, who had 
already expressed his views on the merits).

-11- 11

(6th Cir. 1985) ("By preserving the issue before the NASD

bodies and the SEC the appellants could have obtained direct

judicial review of their constitutional claims following all

administrative steps.").

Swirsky attempts to avoid these doctrines by

distinguishing his action in district court from that before

the NASD and SEC. Swirsky's claims are, however, essentially

the same as those he raised before the NASD and the SEC in

his motion to vacate the settlement agreement.5 Swirsky

argues that the harms he suffered as a result of the NASD's

"threat" to Tucker Anthony give rise to independent causes of

action, analogous to causes of action he would have if a NASD

employee had punched him in the nose during the course of the

disciplinary complaint. Assaults are not a part of the

NASD's regulatory arsenal, but it is clear that the NASD's

communication to Tucker Anthony arose out of a disciplinary

action by the NASD. Swirsky's analogy is inapt.

IV. Conclusion

Swirsky's proper course of action, once the SEC

denied his appeal, was to appeal to this court. He did not

do so. Swirsky reached this court by a different, and

incorrect, route. At oral argument, Swirsky's counsel stated

that it was "ironic" that this case was now before the First

 

5. We note that Swirsky was alerted to the NASD "threat"
before the settlement agreement was filed with the SEC. 

-12- 12

Circuit. The irony instead lies in the fact that Swirsky

asks this court to do what he claims could not be done via

the proper review process -- a process that should have

culminated here.

The decision of the district court is affirmed. 

-13- 13