**ANALOG DEVICES, INC., Plaintiff**

v.

**LINEAR TECHNOLOGY CORPORATION, Defendant.**

**No. CIV.A. 00–10841–EFH.**

United States District Court, D. Massachusetts.

March 21, 2007.

---

Ayla A. Lari, Eric D. Levin, Wayne M. Kennard, Wayne L. Stoner, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Analog Devices, Inc., Plaintiff.

Anna A. Kobilansky, Garry J. Tuma, Laurence S. Rogers, Thomas J. Vetter, Fish & Neave, New York, NY, Kenneth B. Herman, Michael P. Kahn, Robert C. Morgan, Stephen T. Straub, Ropes & Gray LLP, New York, NY, Mark D. Rowland, Fish & Neave, Palo Alto, CA, Priti R. Langer, Ropes & Gray LLP, Washington, DC, William G. Meserve, Roberto Tepichin, Mark Szpak, Ropes & Gray LLP, Boston, MA, for Linear Technology Corporation, Defendant.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

After hearings and consideration of submissions by the parties, the Court rules on Defendant Linear Technology's ("LTC") Motion for Summary Judgment II relating to Invalidity of reissue claims 27 through 42 U.S. Reissue Patent No. RE 38, 083 ("the '083 patent") over the Maxim product according to 35 U.S.C. § 251. The application for the reissue patent was filed on May 5, 1995. This cause of action arises from Analog Devices, Inc.'s ("ADI") com-

plaint that certain LTC digital-to-analog converter ("DAC") products infringed the asserted claims of the '083 patent. The '083 patent relates to DAC drive circuits, and particularly to DAC circuits that are connected to output operational amplifiers having a permissible input voltage range less than the circuit's rail-to-rail voltage differential.

In order to resolve the ultimate issue, a best mode inquiry must be made to determine (1) whether the '083 patent disclosed the best mode of practicing claims 27 through 42, which would entitle those claims to a March 18, 1994 date when the original '083 patent application was filed; and (2) whether the Maxim product, as it existed before May 1994, anticipates claims 27 through 42.

 Best mode analysis defines the invention by construing the claims. *Bayer AG & Bayer Corp. v. Schein Pharm., Inc.,* 301 F.3d 1306, 1320 (Fed.Cir.2002). Unclaimed subject matter is not usually subject to the best mode disclosure requirements. *See Engel Indus., Inc. v. Lockformer Co.,* 946 F.2d 1528, 1531 (Fed. Cir.1991). However, the Federal Circuit has determined that patents violate the best mode requirement in two situations: "when they do not adequately disclose a preferred embodiment of the invention" or "when the patentee failed to disclose aspects of making or using the claimed invention and the undisclosed matter materially affected the properties of the claimed invention." *Bayer,* 301 F.3d at 1319.

 Intent to conceal is not required for a best mode violation. "A best mode violation may occur if the disclosure of the best mode is so objectively inadequate as to effectively conceal the best mode from the public." *U.S. Gypsum v. Nat'l Gypsum Co.,* 74 F.3d 1209, 1215 (Fed.Cir. 1996).[1] Instead, the Court must determine "whether, at the time the patent application was filed, the inventor had a best mode of practicing the claimed invention," and, if so, "it must be determined whether the specification adequately disclosed what the inventor contemplated as the best mode so that those having ordinary skill in the art could practice it." *Id.* at 1212. The best mode itself does not have to be recited in the claim. Rather, the best mode is the best way of *carrying out* the subject matter that is recited in the claims:

> A patent applicant *must* disclose the best mode of carrying out his claimed invention, not merely *a* mode of making and using what is claimed. A specification can be enabling yet fail to disclose an applicant's contemplated best mode. Indeed, most of the cases in which we [the Federal Circuit] have said that the best mode was violated addressed situations where an inventor failed to disclose non-claimed elements that were nevertheless necessary to practice the best mode of carrying out the claimed invention.

*Chemcast Corp. v. Arco Indus. Corp.* 913 F.2d 923, 928 (Fed.Cir.1990).

For example, in *Dana Corp. v. IPC Ltd. P'ship,* 860 F.2d 415, 419–20 (Fed.Cir. 1988), the Federal Circuit found a best mode violation based on comparison of facts known to the inventor at the time of the invention and the disclosure in the

---

1. It is noted that recent Federal Circuit cases have involved cases where a deliberate intent to conceal has been required to prove a best mode violation. *See High Concrete Structures v. New Enter. Stone & Lime Co.,* 377 F.3d 1379, 1383 (Fed.Cir.2004); *Cardiac Pacemak-* ers, Inc. v. St. Jude Med., Inc., 381 F.3d 1371, 1378–79 (Fed.Cir.2004). However, the Federal Circuit has not indicated that *Gypsum's* holding is no longer valid or has been superceded.

application, where the treatment in question was not recited in the claim. Similarly, the Federal Circuit has found a best mode violation where a claim recited "a grommet for sealing" and the best mode, while undisclosed, was the inventor's preferred material for making the grommet, although the material for the grommet was not part of the claim. *See Chemcast Corp.*, 913 F.2d 923 at 924, 928–30.

■ The initial issue here is that if either an amplifier with a feedback impedance matching circuit or a dummy bit with an impedance matching circuit was inventor James Ashe's best mode of practicing the invention claimed, and it was not disclosed in the original 1994 patent application, the '083 patent is entitled only to the May 5, 1995 filing date of the continuation-in-part ("CIP") application.

■ As the Court in *Chemcast* observed, "Assessing the *adequacy* of the disclosure, as opposed to its *necessity*, is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art." *Chemcast Corp.*, 913 F.2d 923 at 928. Moreover, "it is not up to the courts to decide *how* an inventor should disclose the best mode, but *whether* he has done so adequately under the statute."[2] *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1537 (Fed. Cir.1987). Here, in the parties' submissions to the Court, and further developed in hearings, a number of factors emerged, now narrowed to eight, with respect to the best mode violation:

1. At the time the original patent application was filed, there were undisclosed features. Inventor Ashe has conceded that two features, the impedance-matched amplifier and the impedance-matched dummy bit were not disclosed in the original

nal patent application in 1994. (Straub Supp. Decl. Ex. 5; Ashe Tr. 143–144, 151, 182–183; Ex. 16).

2. Ashe testified as to the significance of these two features, stating that the amplifier with feedback matching circuit and a dummy bit with impedance matching were necessary for accuracy. (Langer Decl. Ex. 70, Ashe Tr. 151–152, 182–183, 186).

With respect to an amplifier with feedback impedance matching circuit, Ashe was asked when he decided that "the transmission gate in R over two ought to be included in the amp circuit." He replied, "That would have been necessary to have this product achieve *its best accuracy* and would have been obvious to me *at the very start.* I believe *that was in the original* idea and was omitted on this Figure 5 document of the original submission." (Langer Decl. Ex. 70, Ashe Tr. 182–183) (emphasis added). Ashe testified that he added a transmission gate to the 1995 revised application because it was omitted on Figure 5 of the original submission: "[T]he original schematic had errors on it that we corrected, *which I missed* when I approved *the first draft.*" (Langer Decl. Ex. 70, Ashe Tr. 181–183) (emphasis added). Ashe further explained that the transmission gate and a resistor "are impedance matching structures for input bias currents of the amplifier A2." (Langer Decl. Ex. 70, Ashe Tr. 181–183).

With respect to a dummy bit with impedance matching circuit, Ashe testified that "an extra [dummy bit] on an R–2R ladder *has to impedance* scale to the preceding bits, and that's achieved by putting in those three components [—two resistors and a transmission gate or switch]." (Langer Decl. Ex. 70, Ashe Tr. 186) (emphasis

---

**2.** A patent specification must "set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶ 1.

added). Moreover, Ashe stated, "When I *first* saw Figure 5, I obviously didn't pay enough attention to fix it, because I approved it *and it's incorrect.*" (Langer Decl. Ex. 70, Ashe Tr. 193–194) (emphasis added). Ashe also testified that "[t]he [original '618 application Figure 5] schematic is incorrect" because "[t]he entire dummy switch has been omitted on [the] drawing." (Langer Decl. Ex. 70, Ashe Tr. 142–144).

Ashe's testimony demonstrates that each of these impedance matching circuits was part of his conception at the time he filed his original patent application. As he explained, when he saw the draft of Figure 5 before the original application was filed, he failed to see that it was then incorrect. Ashe's testimony, thus, revealed that Figure 5 in the original patent application of 1994 was erroneous at the outset because that figure did not include these necessary circuits as part of the amplifier and the dummy bit, although they were essential to Ashe's conception of the invention.

3. After Ashe realized that his original ideas had been mistakenly omitted from the 1994 patent application, he wrote to his lawyer asking that the application be modified because it did not actually disclose his invention. (Langer Decl. Ex. 72). Ashe explained, "In fact, the [necessary] division is achieved by adding a matched attenuation network instead of an extra bit. We need to modify our application to show this. The added components are 2 resistors and a switch." (Straub Decl. Ex. 16). The resulting CIP application contained both impedance matching circuits, and was subsequently approved by the Patent Office. (Straub Decl. Ex. 4, LC003349, LC003338, *compare* with Ex. 3, LC003309).

4. Plaintiff ADI argues that the impedance matching claims were not in the original application and are therefore unclaimed subject matter because not required by claims 27 through 42, which are at issue in this matter. However, Ashe's memorandum to his lawyer specifically refers to his invention as including "a matched attenuating network" with "2 resistors and a switch." (Langer Decl. Ex. 72). This is the dummy bit impedance matching structure that is "achieved by putting in those three components." (Langer Decl. Ex. 70, Ashe Tr. 186). ADI also told the Court that Ashe's 1993 conception of the invention included a switch in the attenuation network, "Ashe used a gain of two resistor network around the amplifier and used an attenuator in the DAC to divide the input range by two." (Langer Dec. Ex. 73 at 7). Thus, the inventor himself has confirmed that both the dummy bit impedance matching and the amplifier feedback impedance matching circuits were features of his original concept.

5. One of ADI's arguments, expressed in a hearing on this motion, was that Ashe did not have a best mode in mind until after the original application was filed. However, ADI stated in its brief in opposition to LTC's motion that Ashe conceived and reduced his patented circuit to practice in 1993, stating, "[T]he conception occurred no later than April 23, 1993—the date that Mr. Ashe sent a written invention disclosure for patenting the invention to Analog's attorney, Richard S. Koppel." (Langer Decl. Ex. 73 at 8). Moreover, Ashe's lawyer, Koppel, who prosecuted the '083 application, confirmed that each of these impedance matching circuits was part of Ashe's best mode when the original application was filed in 1994, and testified that when Ashe first communicated his invention to Koppel in 1993, Ashe described the "structure shown in the [1995] patent." Original Figure 5 in 1994 did not include these circuits as part of the amplifier and the dummy bit; however, the

structure in the patent Figure 5 of the subsequent CIP application *does* include both the amplifier with an impedance-matched feedback circuit and the dummy bit with an impedance-matched circuit. (Langer Decl. Ex. 71, 9/20/01 Koppel Tr. 164–165, 174). ADI has thus conceded that the dummy bit impedance matching circuit and the amplifier feedback impedance matching circuit were part of Ashe's conception at the time the original application was filed in 1994 although they were not disclosed until the CIP application in 1995.

■ 6. The parties were asked to address the question of whether plaintiff's Exhibit 42, Expert Report of M.J. Callahan in Response to Expert Report of [defendant's expert] Dr. Richard Fair (hereafter, Analog Ex. 42—Callahan Rebuttal Report) raises a dispute of material fact. 35 U.S.C § 112 is the statute that sets forth the three requirements with which a patent specification must comply—written description, enablement, and best mode, and it states:

> The specification shall contain a *written description* of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as *to enable* any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, *and* shall *set forth* the best mode contemplated by the inventor of carrying out his invention. (emphasis added.)

The Court of Appeals for the Federal Circuit has made clear that each of these requirements is separate and distinct.

For example, with respect to enablement and best mode:

> The essence of [the enablement requirement] is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. *Separate and distinct* from [enablement] is [the best mode requirement], the essence of which requires the inventor to disclose the best mode *contemplated by him,* as of the time he executes the application, of carrying out his invention. Manifestly, the sole purpose of this latter requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.
>
> ... The question of whether an inventor has or has not disclosed what he feels is his best mode is, however, a question separate and distinct from the question of the *sufficiency* of his disclosure to satisfy the requirements of [enablement].

*Spectra–Physics,* 827 F.2d at 1532 (quoting *In re Gay,* 50 C.C.P.A. 725, 309 F.2d 769 (Cust. & Pat.App.1962)).

Callahan stated that the disclosures made in the original 1994 application were "more than sufficient to teach one of ordinary skill in the art how to practice the claimed invention." (Analog Ex. 42, Callahan Rebuttal Report ¶ 305). ADI has used Callahan's testimony to argue that the disclosures of the patent specification were sufficient to permit one to practice the claimed invention.[3] Callahan's testimony, however, merely relates to enablement, not best mode. The Court of Ap-

---

3. ADI asserts that because the term "impedance matching" does not appear anywhere in claims 27 through 42 there cannot be a best mode violation. *See* Analog Devices, Inc.'s Memorandum in Opposition to Defen-

dant Linear Technology Corporation's Motion for Summary Judgment II, at 8. This is part of the unclaimed subject matter argument addressed in section 4 above.

peals explained in *Dana Corp.*, 860 F.2d at 419:

> Enablement looks to placing the subject matter of the claims generally in the possession of the public. If, however, the applicant develops specific instrumentalities or techniques which are recognized at the time of filing as the best way of carrying out the invention, then the best mode requirement imposes an obligation to disclose that information to the public as well.

As has been noted, "[a] patent applicant must disclose the *best* mode of carrying out his claimed invention, not merely *a* mode of making and using what is claimed. A specification can be enabling yet fail to disclose an applicant's contemplated best mode." *Chemcast Corp.* 913 F.2d at 928. It is because Callahan's testimony pertains only to enablement and does not reach the best mode argument that there is no dispute of material fact created by ADI's expert opinion on this issue.

 The enablement requirement simply means that the inventor must disclose enough in the specification to teach a person of ordinary skill in the art to practice the claimed invention without undue experimentation. In this case, the enablement requirement means only that the original '618 application must disclose enough to teach such a person to make the DAC circuit shown in original Figure 5. The best mode requirement means that the inventor must disclose the best way that he knows for making and using the claimed invention. In view of Ashe's testimony, discussed above, there can be no dispute that the dummy bit impedance matching circuit and the amplifier impedance matching circuit were the best ways he knew of making his claimed DAC cir-

cuit at the time he filed the original '618 application in 1994.

There is no dispute that the '618 application does not disclose either the dummy bit impedance matching circuit or the amplifier impedance matching circuit. ADI told the Patent Office so. (Straub Decl. Ex. 3, LC3309; Straub Decl. Ex. 4, LC 3329–31, 3349; Straub Decl. Ex. 9, Ashe Tr. 142–144; Straub Decl. Ex. 5, LC003633). ADI also conceded that this was so in response to LTC's Statement of Undisputed Facts (Langer Decl. Ex. 74, SMF ¶¶ 7–9), in its opposition papers (Langer Decl. Ex. 73, at 9), and at the November 14, 2006 hearing. (Langer Decl. Ex. 75 at 68).

Dr. Fair, defendant LTC's expert, stated that in his opinion the asserted claims of the RE083 patent were not entitled to the 1994 filing date because that application did not satisfy the best mode requirement. Callahan responded, "I do not agree." (Analog Ex. 42—Callahan Rebuttal Report, ¶ 301). ADI relies on this statement to show that Callahan clearly and unambiguously opined that the '618 application satisfied the best mode requirement, and thus raised a genuine issue as to material fact. However, the reasoning Callahan provides in his response is not sufficient to support a finding of best mode, despite his unequivocalness. In paragraphs 305—307 of Analog's Ex. 42, Callahan explains why he thinks Ashe was not required to disclose either of these circuits in the original application. First, Callahan says that these two circuits are not necessary to practice the claimed invention. Second, he says that these circuits are mere routine commercial production details. The first explanation—that these circuits are not necessary to practice the claimed invention—goes only to enablement.[4] It has

---

4. Callahan's testimony appears in section of the report entitled "Best Mode," and he be-

gins by asserting that production details would not need to be explained to one of

nothing to do with best mode so cannot be used to establish a factual dispute on this issue. (The second explanation is addressed in section 8 below).

7. The claimed invention of Claims 27 through 42 is a DAC drive circuit. Each claim recites that DAC limitation, and each claim recites, as elements of that drive circuit, an amplifier and an attenuation portion, section, network or a divide function. The dummy bit impedance matching circuit is a component of and the preferred way of practicing the claimed attenuation network section or portion. The amplifier impedance matching circuit is a component of and the preferred way of practicing the claimed amplifier. The specification of the original '083 patent further demonstrates that these two impedance matching features are the preferred embodiment of the invention:

> In *a preferred embodiment* the divider is implemented with an attenuation network, in the form of m *dummy DAC bits, that is impedance matched* to the DAC. The DAC, which is connected to receive an n-bit digital signal, thus has $n+m$ bits. The dummy bits are con-nected as the DAC's most significant bits, and are always OFF. This produces a downscaling of the input signal range by a factor $1/2^m$. The op am is configured to produce a compensating $2^m$ amplification, and *includes a feedback circuit that is also impedance matched* to the DAC.

(Langer Decl. Ex. 76, col. 2 ll 7–16) (emphasis added). In addition, Ashe testified that both the circuits were necessary for accuracy (Langer Decl. Ex. 70, Ashe Tr. 151–152, 182–183) and ADI relied on the accuracy of the claimed circuit in distinguishing over the prior art Yamashita patent.[5] (Langer Dec. Ex. 78, AL51502).

8. The significance of the impedance features to the patent is at dispute in this case. It is agreed by the parties that neither the impedance matching dummy bit nor the amplifier feedback impedance matching were disclosed in the original application. (Straub Supp. Decl. Ex. 55; Ashe Tr. 143–144, 151, 182–183; Ex. 16). It has been ADI's argument that these features are production details that do not have to be disclosed.[6] In paragraphs 306–

---

ordinary skill in the art practicing the best mode of the original patent application. *See* Analog Ex. 42—Callahan Rebuttal Report p. 115, ¶ 306. However, the language stating that the allegedly omitted details (impedance matching) are "not required for a person of ordinary skill in the art to practice the invention" applies to enablement rather than to the best mode of carrying out the invention. The issue at hand is disclosure of the best mode in the original patent application, but the best mode requirement is not addressed by Callahan in his testimony (or by the mere title of a section). Even plaintiff ADI's own memorandum in opposition to summary judgment uses the language of enablement rather than best mode: "Accordingly, Mr. Callahan opined that the disclosure in the '618 application would enable one of ordinary skill in the art to practice the inventions of claims 27—42." (emphasis added). Analog Devices, Inc.'s Dec. 12, 2006 Memorandum in Opposition to

Defendant Linear Technology Corporation's Motion for Summary Judgment II, at 8, citing Analog Ex. 42—Callahan Rebuttal Report ¶ 305.

5. ADI's original '083 patent application was originally rejected by the Patent Office in 1994 as unpatentable over the prior Yamashita patent.

6. Notably, the plaintiff's expert witness Callahan stated,

> In my opinion, these details fall into the category of production or routine details, and would not need to have been explained to one of ordinary skill in the art in 1993–94 for such a person to practice the best mode of the inventions, as disclosed in the '618 application and accompanying text. The allegedly omitted details relate to production details for commercial prod-

307 of Analog's Ex. 42, Callahan stated that these circuits were mere routine commercial production details. Paragraph 306 states that "these details [the omitted best mode subject matter] fall into the category of production or routine details" and that these details "relate to production details for commercial products and are not required for a person of ordinary skill to practice the invention." Paragraph 307, like paragraph 306, characterizes those two circuits as "not required to practice the asserted claims" and as "an unrelated commercial production detail." However, to the extent these paragraphs relate to practicing the invention, they relate to enablement only.

As the Federal Circuit has explained, production details, in the context of a best mode inquiry, are details that would be obvious: "details of production about which those of ordinary skill in the art would already know." *Great N. Corp. v. Henry Molded Products, Inc.*, 94 F.3d 1569, 1572 (Fed.Cir.1996). The Court of Appeals has also explained that the omission of details known to the inventor for "improving" the invention violates the best mode requirement. *U.S. Gypsum*, 74 F.3d at 1213. Aspects of making or using the claimed invention that materially affect the

properties or operation of the claimed invention are not production details. *See Bayer*, 301 F.3d at 1319.

ADI has argued that the impedance matching dummy bit and amplifier feedback impedance matching were mere details while it simultaneously relied upon the addition of the impedance matching features during the CIP process to distinguish claims 5 through 26 from the Yamashita patent.[7] In fact, during the CIP process, ADI told the Patent Office that amplifier feedback impedance matching was not obvious, stating that the Yamashita prior art patent did not disclose or suggest amplifier feedback impedance matching.[8] (Straub Decl. Ex. 5, LC 003639–3640). ADI also told the Patent Office that amplifier feedback impedance matching would not have been obvious to one reading the Maxim data sheet. (Straub Decl. Ex. 5, LC 003642–3643).

ADI made similar assertions to the Patent Office about dummy bit impedance matching. ADI stated that the dummy bit impedance matching was neither disclosed nor suggested by Yamashita.[9] (Straub Dec. Ex. 5, LC 003639–3640). ADI further told the Patent Office that dummy bit impedance matching would not have been

---

ucts, and are not required for a person of ordinary skill in the art to practice the invention.

See Analog Ex. 42—Callahan Rebuttal Report ¶ 306.

7. The CIP application filed by ADI on May 5, 1995 "added certain new claims that eventually matured into claims 5—26 of the RE083 patent." Analog Devices, Inc.'s June 19, 2006 Memorandum in Opposition to Defendant Linear Technology Corporation's Second Motion for Summary Judgment of Invalidity, at 9.

8. For example, in the CIP application, ADI stated that its "circuit is much simpler and more accurate" than Yamashita's circuit. (Langer Decl. Ex. 78, LC 003414). During

re-examination with respect to claims 5 through 26, ADI told the Patent Office that impedance matching "enables the DAC output to be more accurately divided" than the Yamashita circuit does. (*See, e.g.*, Langer Decl. Ex. 78, LC 003413–14, Langer Decl. Ex. 79, LC003641, Langer Decl. Ex. 77, AL51502–03).

9. A 1996 Amendment to the May 5, 1995 filing states, "In addition to not disclosing any capability for tying its DAC to both rails, rather than to only one, Yamashita suffers from other problems that are resolved by applicant's circuit." U.S. Patent No. 8,436,024, p. 7 (amendment filed Nov. 18, 1996).

obvious *in view of the Maxim data sheet.* (Straub Decl. Ex. 5, LC 003642, 003646).

] ADI's statements to the Patent Office preclude argument that the impedance matching circuits are "production details." ADI repeatedly represented to the Patent Office that the dummy bit impedance matching circuit and the amplifier feedback impedance matching circuit would not have been obvious to a person of ordinary skill in the art. ADI used these representations to the Patent Office during the CIP application process to successfully persuade the Patent Office that the impedance matching aspects of the amplifier and dummy bit were patentably distinct from the prior art, and thus patentable over Yamashita and Maxim references. (Straub Decl. Ex. 5, LC 003668–43). ADI made these representations to successfully persuade the Patent Office to allow those claims. Features the plaintiff has successfully argued as being patentably distinct are not simultaneously production details that would have been obvious to one of skill in the art. While the arguments were made in connection with claims 5 through 26 (which specifically recite impedance matching), these representations to the Patent Office confirm the materiality and importance of the impedance matching amplifier and the impedance matching dummy bit for the operation of the circuits that are the subject of claims 27 through 42.

Accordingly, ADI's representations to the Patent Office demonstrate that the impedance matching features *do* materially affect the use of the claimed invention and are not mere details. As a result, ADI is estopped from arguing that these two circuits it stated were not obvious for purposes of patentability are now mere commercial production details already familiar to those of ordinary skill in the art. *See Great N. Corp.*, 94 F.3d at 1572. ADI's successful argument to the Patent Office shows they were not immaterial. *See, e.g. Lampi Corp. v. Am. Power Prods.*, 228 F.3d 1365, 1377 (Fed.Cir.2000) (recognizing that judicial estoppel "applies to administrative proceedings" and prevents a party from making one argument to the Patent Office and a contradictory argument in a subsequent judicial proceeding) (citation omitted); *see also Portela–Gonzalez v. Sec. of the Navy*, 109 F.3d 74, *78 (1st Cir.1997) ("Equitable doctrines of estoppel apply in administrative and judicial fora ... and a party cannot take one position in an underlying administrative proceeding and then disclaim it in a subsequent suit arising out of the agency proceeding").

ADI also told the Patent Office that the accuracy of the claimed circuit matters in order to distinguish its claims from the prior art—i.e., impedance matching *materially affects* the properties of the claimed invention. (Straub Decl. Ex. 4, LC003414; Straub Decl. Ex. 5, LC003642–43; Straub Decl. Ex. 6, AL51502). For example, ADI distinguished its claimed DAC circuit from prior art Yamashita patent in part because "applicant's circuit is much simpler and more accurate than the Yamashita circuit." (Straub Decl. Ex. 4, LC003414). ADI also emphasized the importance of accuracy to this invention. In describing the claimed circuit, ADI told this Court the "[r]ail to rail operation is desirable in DAC circuits ... because it typically provides greater accuracy, efficiency, and ease of design than typical DACs that do not operate rail-to-rail." Analog Devices, Inc.'s June 19, 2006 Memorandum in Opposition to Defendant Linear Technology Corporation's Motion for Summary Judgment II, at 3. Moreover, Callahan's expert report relied on accuracy to distinguish the claims at issue here from the Yamashita patent. (Analog's Exhibit 42, Callahan Rebuttal Report ¶ 209–211). Since Ashe explained

that the dummy bit impedance matching circuit and the amplifier feedback impedance matching circuit were necessary for improved accuracy, ADI cannot now argue that the two impedance matching circuits which provide that accuracy and which would not have been obvious are mere "routine production details." Thus, as a matter of law, neither of the impedance matching features at issue here can be "production details" which do not have to be disclosed.

In its opposition memorandum of March 2, 2007, ADI belatedly asserts that, contrary to statements made earlier in its submissions and in hearings, Callahan's expert opinion "that impedance matching relates to 'production details for commercial products'" ... "is not relevant here because *Analog is not relying on that portion of Mr. Callahan's opinion to oppose LTC's best mode challenge.*" (Analog Devices, Inc.'s March 2, 2007 Memorandum in Opposition to Defendant Linear Technology Corporation's Motion for Summary Judgment II, at 11). Instead, ADI states that it is relying on Callahan's "separate opinions—which are never challenged by LTC—that impedance matching is not an element of claims 27—42 and that a person of ordinary skill in the art would not consider impedance matching necessary to practice the invention of claims 27—42." *Id.* It is the Court's understanding that these arguments have indeed been challenged by the defendant, and they are analyzed in sections 4, 5, 6, and 7 above.

\* \* \* \* \* \*

In summary, the Court has resolved two factual issues raised by the plaintiff and two legal issues. The Court has addressed the factual issues raised by the plaintiff: (1) is the disclosure in the original patent application sufficient for practicing the best mode of the invention, and (2) are these impedance matching features insig-

nificant details, not needed to practice the best mode. It has been ADI's argument that their expert's testimony raises a dispute of material fact as to the significance of the impedance matching features as relating to best mode. Paragraph 305 of Analog's Exhibit 42 contains the first of Callahan's explanations. That paragraph says that the "disclosure of the '618 application is more than sufficient to teach one of ordinary skill in the art how to practice the claimed invention." That is enablement. That paragraph says nothing at all about the best mode. There are no material facts in dispute because Callahan's testimony pertains to enablement rather than the actual best mode of the patent, which is at issue.

Callahan's second explanation sets forth the theory that the impedance matching features omitted from the original '618 application are mere details, not necessary to practice the best mode. Yet, as demonstrated above, these features do materially affect the properties of the claimed invention. Thus, again, there is no genuine dispute of material fact because ADI is estopped from relying on Callahan's testimony that the two features are mere details.

Plaintiff ADI argued two legal issues: (1) that unclaimed subject matter is not subject to the best mode requirement, and (2) that intent to conceal is necessary for a best mode violation. The Court has determined that, here, the patentee failed to adequately disclose a preferred embodiment of the invention and failed to disclose aspects of making or using the claimed invention and the undisclosed matter materially affected the properties of the claimed invention in 1994. The Court has also determined that, here, intent to conceal is not required for a best mode violation where the disclosure of the best mode

is so objectively inadequate as to effectively conceal the best mode from the public.

Accordingly, the Court rules as a matter of law that the original application for the '083 patent did not comply with the best mode requirements of 35 U.S.C. § 112 because of the plaintiff's failure to adequately disclose a preferred embodiment of the invention and failure to disclose aspects of making or using the claimed invention and the undisclosed matter materially affected the properties of the claimed invention. The failure to comply constitutes a best mode violation that invalidates the 1994 patent date. Therefore, the patent's effective date is May 5, 1995, the filing date of the revised CIP application.

██ It is noted that a patent is presumed to be valid, and that invalidity must be established by clear and convincing evidence before a jury. There is, however, a genuine dispute of material fact as to whether the '083 Patent, effective on the May 5, 1995 filing date of the CIP application, is anticipated by MAX 511/512/513 products that were sold and offered for sale more than a year before May 1995. A motion for summary judgment can only be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue of fact is "genuine" if it may reasonably be resolved in favor of either party. *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). "Material" facts are those which possess the capacity to sway the outcome of the litigation under the applicable law. *Okmyansky v. Herbalife Intern. of Am., Inc.*, 415 F.3d 154, 158 (1st Cir.2005). In ruling on the motion, the Court must view the facts in the light most favorable to the non-moving party, here, the plaintiff, drawing all reasonable inferences in that party's favor. *Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 140 (1st Cir.2002). Therefore, the Court denies Defendant's Motion for Summary Judgment on the question of invalidity of claims 27 through 42 of the '083 Patent over Maxim.

SO ORDERED.