# United States Court of Appeals
## For the First Circuit

Nos. 20-1037, 20-1119

GILBERTO PEREIRA BRITO, individually and on behalf of all those
similarly situated; FLORENTIN AVILA LUCAS, individually and on
behalf of all those similarly situated; JACKY CELICOURT,
individually and on behalf of all those similarly situated,

Petitioners, Appellants/Cross-Appellees,

v.

MERRICK B. GARLAND,* Attorney General, U.S. Department of
Justice; TIMOTHY S. ROBBINS, Acting Field Office Director,
Enforcement and Removal Operations, U.S. Immigration and Customs
Enforcement; TAE D. JOHNSON, Acting Director, U.S. Immigration
and Customs Enforcement; ALEJANDRO MAYORKAS, Secretary, U.S.
Department of Homeland Security; JEAN F. KING, Director,
Executive Office of Immigration Review, U.S. Department of
Justice; ANTONE MONIZ, Superintendent of the Plymouth County
Correctional Facility; YOLANDA SMITH, Superintendent of the
Suffolk County House of Corrections; STEVEN J. SOUZA,
Superintendent of the Bristol County House of Corrections;
CHRISTOPHER BRACKETT, Superintendent of the Strafford County
Department of Corrections; LORI STREETER, Superintendent of the
Franklin County House of Corrections,

Respondents, Appellees/Cross-Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Merrick B. Garland has been substituted for former Attorney General
William P. Barr as respondent, Acting Director Tae D. Johnson has
been substituted for former Acting Director Matthew T. Albence as
respondent, Secretary of Homeland Security Alejandro Mayorkas has
been substituted for former Secretary Chad F. Wolf as respondent,
and Director Jean C. King has been substituted for former Director
James McHenry as respondent.

[Hon. Patti B. Saris, U.S. District Judge]

_____

Before

Lynch, Lipez, and Kayatta,
Circuit Judges.

_____

    Daniel McFadden, with whom Matthew R. Segal, Adrian Lafaille, American Civil Liberties Union Foundation of Massachusetts, Inc., Gilles R. Bissonnette, Henry R. Klementowicz, SangYeob Kim, American Civil Liberties Union Foundation of New Hampshire, New Hampshire Immigrants' Rights Project, Michael K. T. Tan, ACLU Foundation Immigrants' Rights Project, Susan M. Finegan, Susan J. Cohen, Andrew Nathanson, Mathilda S. McGee-Tubb, Ryan Dougherty, and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. were on brief, for Appellants/Cross-Appellees.
    Maura Healey, Attorney General of Massachusetts, Amanda Hainsworth, Assistant Attorney General, Civil Rights Division, Mark R. Herring, Attorney General of Virginia, William Tong, Attorney General of Connecticut, Claire Kindall, Solicitor General of Connecticut, Joshua Perry, Special Counsel for Civil Rights, Xavier Becerra, Attorney General of California, Kathleen Jennings, Attorney General of Delaware, Clare E. Connors, Attorney General of Hawai'i, Kwame Raoul, Attorney General of Illinois, Aaron M. Frey, Attorney General of Maine, Brian E. Frosh, Attorney General of Maryland, Dana Nessel, Attorney General of Michigan, Keith Ellison, Attorney General of Minnesota, Aaron D. Ford, Attorney General of Nevada, Gurbir S. Grewal, Attorney General of New Jersey, Hector Balderas, Attorney General of New Mexico, Letitia James, Attorney General of New York, Ellen F. Rosenblum, Attorney General of Oregon, Peter F. Neronha, Attorney General of Rhode Island, Thomas J. Donavan, Jr., Attorney General of Vermont, Robert W. Ferguson, Attorney General of Washington, and Karl A. Racine, Attorney General for the District of Columbia, on brief for the Commonwealths of Massachusetts and Virginia, the States of Connecticut, California, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington, and the District of Columbia, amici curiae.
    Benjamin Casper Sanchez, Mimi Alworth, Valkyrie Jensen, Mengying Yao, and James H. Binger Center for New Americans, University of Minnesota Law School on brief for American Immigration Lawyers Association, amicus curiae.
    Dayna J. Zolle, Elizabeth B. Wydra, Brianne J. Gorod, and

Brian R. Frazelle on brief for Constitutional Accountability Center, amicus curiae.

Huy M. Le, Trial Attorney, Office of Immigration Litigation, with whom Ethan P. Davis, Acting Assistant Attorney General, Civil Division, William C. Peachey, Director, District Court Section, Office of Immigration Litigation, Elianis N. Pérez, Assistant Director, C. Frederick Sheffield, Senior Litigation Counsel, and J. Max Weintraub, Senior Litigation Counsel, were on brief, for Appellees/Cross-Appellants.

December 28, 2021

**KAYATTA, Circuit Judge**. This class action presents a due process challenge to the bond procedures used to detain noncitizens during the pendency of removal proceedings under 8 U.S.C. § 1226(a), the discretionary immigration detention provision. In light of our recent decision in Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), we affirm the district court's declaration that noncitizens "detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing at which the Government must prove the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence." Brito v. Barr, 415 F. Supp. 3d 258, 271 (D. Mass. 2019). We conclude, however, that the district court lacked jurisdiction to issue injunctive relief in favor of the class, and we otherwise vacate the district court's declaration as advisory. Our reasoning follows.

## I.

The following facts are not in dispute. The three petitioners, who serve as named class representatives in this action -- Gilberto Pereira Brito, Florentin Avila Lucas, and Jacky Celicourt -- are noncitizens who were detained by Immigration and Customs Enforcement (ICE) officers. None has committed a criminal offense that would subject them to mandatory detention pending the duration of their removal proceedings. See 8 U.S.C. § 1226(c). They were therefore detained under section 1226(a), which provides

that the government "may release" a detained noncitizen on "bond of at least $1,500 . . . or conditional parole." Id. § 1226(a)(2). Each promptly petitioned for release on bond pending the completion of removal proceedings. Each also received a hearing before an immigration judge (IJ). At the hearings, the burden was placed on the petitioners in accordance with then-operative agency regulations requiring a detainee to prove that he or she is neither a danger to the community nor a flight risk. See Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). And in each instance, the IJ denied release based on a failure to carry that burden.

The three petitioners subsequently filed a habeas corpus petition and class action complaint for declaratory and injunctive relief in the United States District Court for the District of Massachusetts. The petition contains two claims. In the first claim, the petitioners assert that the Due Process Clause of the Fifth Amendment requires the government to bear "the burden to justify continued detention by proving by clear and convincing evidence that the detainee is a danger to others or a flight risk, and, even if he or she is, that no condition or combination of conditions will reasonably assure the detainee's future appearance and the safety of the community." This claim also asserts that a constitutionally adequate bond hearing must include "consideration of the detainee's ability to pay in selecting the amount of any bond and [consideration of] suitability for release on alternative

- 5 -

conditions of supervision." In their second claim, the petitioners allege that placing the burden of proof in a bond hearing on the noncitizen -- rather than on the government -- violates the Immigration and Nationality Act and the Administrative Procedure Act (APA).

After the petitioners moved for class certification, ICE issued new custody determinations for each of the three petitioners authorizing their release on bond. All three declined to request review of those custody determinations before an IJ. Rather, they promptly posted bond and were released. At the same time, they expressed their willingness to continue to serve as class representatives. The district court in turn ruled that the class claims remained alive, citing Genesis Healthcare Corporation v. Symczyk, 569 U.S. 66, 76 (2013).

The district court certified two subclasses of noncitizens who have been detained by ICE under section 1226(a) in Massachusetts or are otherwise within the jurisdiction of the Boston Immigration Court. The first subclass consists of those detainees who have not yet received a bond hearing before an immigration judge (pre-hearing class), while the second consists of those who have already been denied release following a hearing (post-hearing class). The district court then granted summary judgment in favor of both subclasses on the due process claim and

issued a declaratory order and a permanent injunction.[1] The court's declaratory order first held that noncitizens "detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing at which the Government must prove the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community." Brito, 415 F. Supp. 3d at 271. The district court then held that at any future bond hearing, "the immigration judge must evaluate the alien's ability to pay in setting bond above $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances." Id. In its permanent injunction, the district court ordered immigration courts to follow the requirements set forth in its declaratory order.[2] Both sides appealed.

---

[1] Because the district court found that requiring a noncitizen to bear the burden of proof in his bond hearing violated the Due Process Clause, it concluded that such burden allocation also violated the APA, which bars unconstitutional agency policies. As a result, the court declined to reach the petitioners' alternative arbitrary-and-capricious APA theory. Because our decision in Hernandez-Lara confirms that the government must bear the burden of proof in a bond hearing, 10 F.4th at 39, we need not reach the petitioners' APA claim.

[2] The court also required the government to provide a copy of the declaratory judgment and permanent injunction to members of

The government raises two jurisdictional issues. First, it argues that a statute -- 8 U.S.C. § 1252(f)(1) -- precluded the district court from issuing "classwide injunctive relief and corresponding declaratory relief to enjoin or restrain the operation of the provisions of 8 U.S.C. §§ 1221-1254a on a classwide basis."[3]  Second, in response to our request for supplemental briefing, the government argues that the petitioners lack standing to press their claims that their IJs should have considered alternatives to detention and the noncitizens' ability to pay bond.

As to the merits, many of the issues the parties briefed on appeal were resolved by our decision in Hernandez-Lara.  In that opinion, we held that the minimum requirements of due process dictate that, in order to detain a person under section 1226(a) who is prepared to put up whatever bond is properly required, the

_____

both subclasses, and required the government to provide class counsel with certain information about each member of the post-hearing class.  Except to the extent the government challenges the authority of the district court to issue a classwide injunction, these aspects of the district court's order are not challenged on appeal.

[3]  In its statement of the issues, the government also asserts that "the class does not meet the requirements for certification." But the government's brief makes no attempt to develop this statement into argument, failing even to explain how the requirements of Rule 23 are not met.  Any challenge based on any claimed failure to satisfy Rule 23 is therefore waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

government must either prove by clear and convincing evidence that the person is a danger to the community, or prove by a preponderance of the evidence that the person is a flight risk. 10 F.4th at 39-41. We reaffirm that conclusion here.[4]

Having cleared away the issues already decided in Hernandez-Lara, we consider several questions that remain: whether 8 U.S.C. § 1252(f)(1) barred the classwide injunction entered below; whether the petitioners have standing to argue that their IJs should have considered alternatives to detention and the petitioners' ability to pay bond; and, if so, whether these procedural due process claims have merit.

**II.**

We begin our discussion of the remaining issues on appeal with a brief detour. Although neither party argues that this case became moot when the named plaintiffs were released from detention, that question bears on our own jurisdiction, and we must therefore consider it. See Ruskai v. Pistole, 775 F.3d 61, 67 (1st Cir. 2014) ("Although the parties do not address mootness, we are obliged to consider the issue sua sponte.").

---

[4] Judge Lynch would resolve the merits of these constitutional issues in favor of the government for the reasons she gave in her dissent in Hernandez-Lara. 10 F.4th at 46-59 (Lynch, J., dissenting). Further, in her view the majority decision in Hernandez-Lara is not binding because it is not final, as the time period for en banc review has not expired. See Doe v. Tompkins, 11 F.4th 1, 2-3 (1st Cir. 2021) (Lynch, J., dissenting).

A class action "ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001). Nonetheless, there is at least one exception to this ordinary practice: A court may certify a class in such a circumstance where "it is 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" Genesis Healthcare Corp., 569 U.S. at 76 (quoting County of Riverside v. McLaughlin, 500 U.S. 44, 52 (1991)). The record in this litigation demonstrates that this exception applies, given the ongoing occurrence of bond hearings and the relative pace of federal court litigation and immigration proceedings. The government makes no argument that the record should be viewed otherwise. We therefore see no reason to treat this litigation as moot given the request for class certification.

We turn now to the government's contention that 8 U.S.C. § 1252(f)(1) precludes the issuance of the classwide injunctive relief granted by the district court. Titled "[l]imit on injunctive relief," section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–32], . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

This text plainly leaves untouched a court's jurisdiction to issue injunctive relief in favor of any "individual alien against whom [proceedings under, inter alia, section 1226(a)] have been initiated." It therefore follows that section 1252(f)(1) by itself posed no jurisdictional bar to granting injunctive relief in favor of any individual class member to the extent that each could show that he or she was "an individual alien against whom proceedings" under section 1226(a) had been initiated.

The question then becomes how a court with jurisdiction over multiple individuals' claims for injunctive relief can go about managing the adjudication of those claims. Imagine, for example, that one hundred individual noncitizens detained under section 1226(a) each sought an injunction requiring his or her

release unless the government successfully bore the burden of proving that that individual was either a flight risk or a danger. Ordinarily, a federal trial court would have several procedural tools for handling such a bevy of similar claims by individual noncitizens. It could consider consolidation under Rule 42(a) of the Federal Rules of Civil Procedure. It might try the cases seriatim, beginning with a representative case, the resolution of which might provide a substantial resolution of the rest by stare decisis. Or it might, at the request of the plaintiffs, consider class certification if the claims are sufficiently numerous and similar.

The government maintains that in cases like this, section 1252(f)(1) should be read as removing from the district court's customary toolbox the option of grouping and adjudicating similar individual claims on a classwide basis. Its position is not without textual support. True, section 1252(f)(1) does not mention class actions by name. Compare 8 U.S.C. § 1252(e)(1)(B) (barring courts from "certify[ing] a class under Rule 23"). See also Padilla v. ICE, 953 F.3d 1134, 1149 (9th Cir. 2020) (discussing "[s]ection 1252(f)(1)'s silence as to class actions"), vacated on other grounds, 141 S. Ct. 1041 (2021). But the statute's clear command that "no court (other than the Supreme Court)" may "enjoin or restrain the operation of [8 U.S.C. §§ 1221–32] other than with respect to the application of such provisions

to an individual alien" comfortably encompasses class actions, which necessarily involve more than the case of "an individual" noncitizen. 8 U.S.C. § 1252(f)(1) (emphasis added).

The government also has a trump card in its hand: The Supreme Court has on three occasions stated in dicta that section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231." Reno v. Am.-Arab Anti-Discrimination Comm. (AADC), 525 U.S. 471, 481 (1999); Nken v. Holder, 556 U.S. 418, 431 (2009) (citing AADC, 525 U.S. at 481-82); Jennings v. Rodriguez, 138 S. Ct. 830, 851 (2018) (quoting AADC, 525 U.S. at 481).

We customarily consider ourselves bound to follow "considered dicta" of the Supreme Court. United Nurses & Allied Pros. v. NLRB, 975 F.3d 34, 40 (1st Cir. 2020). The statement in AADC might not by itself qualify as an example of "considered dicta." Nor might its reiteration in Nken. But its repetition in Jennings occurred in the face of a dissenting opinion characterizing the statement as "dict[um]" and objecting to the majority's contention that section 1252(f)(1) precludes classwide injunctions where "[e]very member of the class[]" is an "'individual alien against whom proceedings . . . have been initiated.'" Jennings, 138 S. Ct. at 875 (Breyer, J., dissenting) (quoting 8 U.S.C. § 1252(f)(1)). So the restatement of that dictum

would seem to have been considered, even if bereft of any supporting analysis.

Our colleague who dissents on this question correctly notes that the Supreme Court in Jennings -- after flatly stating that section 1252(f)(1) "'prohibits federal courts from granting classwide injunctive relief against the operation of [8 U.S.C. §§ 1221-32]'" -- instructed the Ninth Circuit to "consider on remand whether it may issue classwide injunctive relief based on [the noncitizens'] constitutional claims." 138 S. Ct. at 851 (quoting AADC, 525 U.S. at 481). These instructions for the lower court do not imply that the Supreme Court pulled back on its flat statement and directed the Ninth Circuit to consider whether section 1252(f)(1) bars classwide injunctions. As we will shortly explain, section 1252(f)(1) as construed in Jennings forbids only classwide relief that "enjoin[s] or restrain[s] the operation" of certain immigration laws. In Jennings, the Supreme Court noted that the Ninth Circuit had not yet analyzed whether injunctive relief on the noncitizens' constitutional claims would enjoin or restrain the statutory provisions at issue. See 138 S. Ct. at 851. If an injunction would do no such thing, section 1252(f)(1) would not bar the relief. Thus, the Court's instructions for remand might even suggest that its earlier statement about classwide injunctions was a holding rather than dictum because it

- 14 -

took off the table any reconsideration of that statement on remand. See 138 S. Ct. at 851 (quoting AADC, 525 U.S. at 481).[5]

We therefore set aside any attempt to determine in the first instance how best to read the statutory text and instead follow the Supreme Court's thrice-repeated, and quite express, declaration. That leads us to the following inquiry: Does the classwide injunction in this case "enjoin or restrain the operation" of section 1226(a)? Before Jennings reached the Supreme Court, the Ninth Circuit held that section 1252(f)(1) did not preclude a classwide order that (1) enjoined the government from detaining noncitizens under 8 U.S.C. §§ 1225(b), 1226(a), or 1226(c) for longer than six months without a bond hearing, and (2) required the government to prove by clear and convincing evidence that detention beyond six months is justified. See Jennings, 138 S. Ct. at 839 (describing the Ninth Circuit's decision below). In finding that section 1252(f)(1) did not bar the injunction, the Ninth Circuit distinguished between enjoining "the operation of the immigration detention statutes" and enjoining conduct "not authorized by the statutes." Id. at 851 (quoting Rodriguez v. Hayes, 591 F.3d 1105, 1120 (9th Cir. 2010)).

---

[5] The dissent's reliance on Nielson v. Preap, 139 S. Ct. 954, 962 (2019) (opinion of Alito, J., in which Roberts, C.J. and Kavanaugh, J. joined), likely suffers from the same misreading of Jennings and, in any event, the statement upon which the dissent relies did not command a majority of the Court.

The Supreme Court seemed to accept this distinction, albeit by questioning whether it could save a claim based on a constitutional due process challenge. Id. The notion seems to be that an injunction against conduct not authorized by a statute does not enjoin the operation of the statute, while an injunction against conduct authorized by a statute but independently barred by the Constitution does enjoin operation of the statute.

The petitioners advance a form of this argument, contending that the injunction only "bears upon agency practice in implementing a discretionary statutory provision, and not upon statutory requirements," which, according to the petitioners, are "silent" on the procedural requirements at issue here (emphases in original). See Grace v. Barr, 965 F.3d 883, 907 (D.C. Cir. 2020) (holding that section 1252(f)(1) "refers only to 'the operation of the provisions' -- i.e., the statutory provisions themselves, and thus places no restriction on the district court's authority to enjoin agency action found to be unlawful" (emphasis in original)).

But, at least in the context of section 1226(a), this is a distinction without a difference. Section 1226(a) plainly grants the government the discretion to "continue to detain [an] arrested alien" pending removal or to "release the alien on . . . bond . . . or . . . parole." The fact that the statute may be "silent" as to procedural issues like the burden of proof does not change the fact that the district court's injunction restrains the

operation of section 1226(a): Under the injunction, if the government cannot bear the burden of showing a noncitizen is a flight risk or a danger, the government may not continue detaining that individual.[6]

We have considered the possibility that section 1226(a) might be construed (so as to avoid a possible constitutional defect) to not grant the government the discretion to detain without carrying the burden of proving flight risk or dangerousness. See Zadvydas v. Davis, 533 U.S. 678, 697 (2001) ("[W]hile 'may' suggests discretion, it does not necessarily suggest unlimited discretion.") With the statute thus construed, one could argue that the requested injunction bars only conduct by the government that is beyond the scope of the discretion granted by the statute. But Jennings cautions against such an ambitious use of the constitutional avoidance canon. See 139 S. Ct. at 842-43, 847-48 ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases."). Without the benefit of any briefing on such an argument, we opt not to pursue that path. Instead, we regard the district court's injunction to be what it appears to be: a classwide injunction that restrains

---

[6] The petitioners' parry to the government's passing invocation of 8 U.S.C. § 1226(e) -- pointing us to Jennings's explanation that section 1226(e) does not bar a challenge to the "constitutionality of the entire statutory scheme," 138 S. Ct. at 841 -- further confirms that the district court's injunction restrains that "statutory scheme."

the operation of section 1226(a) by requiring something that the statute itself does not require. As such, it must be set aside pursuant to section 1252(f)(1), as repeatedly described by the Supreme Court.

Of course, the inability to use a classwide injunction does not deprive the district courts of their other tools for fairly and efficiently managing similar individual requests for injunctive relief. And our decision in Hernandez-Lara establishes binding precedent that adds to that toolbox by effectively accelerating the adjudication of similar habeas petitions within this circuit.

**IV.**

We consider next the petitioners' fallback contention that even if the district court lacked jurisdiction to enjoin the government as it did, it retained jurisdiction to grant declaratory relief. The government develops no argument that section 1252(f)(1) itself bars classwide declaratory relief. Nonetheless, because section 1252(f)(1) appears to limit our statutory jurisdiction, we address this issue. See 8 U.S.C. § 1252(f)(1) ("[N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1232] . . . ."); Jennings, 138 S. Ct. at 851 (instructing the court of appeals to "decide whether it continues to have jurisdiction despite" section 1252(f)(1)). The Jennings

majority reserved the question whether the lower courts "may issue only declaratory relief" under section 1252(f)(1).  138 S. Ct. at 851.  Absent a Supreme Court decision resolving this question, we begin with the statutory text.[7]

Section 1252(f)(1)'s title -- "[l]imit on injunctive relief" -- provides the first indication of the section's limited scope.  Cf. Yates v. United States, 574 U.S. 528, 539-40 (2015) (interpreting a statutory provision in light of its caption and the title of the section where it was codified).  The statutory provision strips courts of jurisdiction to "enjoin or restrain" the operation of certain statutes.  Nothing about that text suggests that it bars declaratory relief.  See Arevalo v. Ashcroft, 344 F.3d 1, 7 (1st Cir. 2003) (interpreting "the word 'enjoin' as

---

[7]  We note, however, that five sitting justices appear to have endorsed the conclusion we ultimately reach -- that section 1252(f)(1) does not strip the lower courts of the power to grant declaratory relief.  See id. at 875-76 (Breyer, J., joined by Sotomayor, J., dissenting); Nielsen, 139 S. Ct. at 962 (opinion of Alito, J., in which Roberts, C.J. and Kavanaugh, J. joined). Each of our sister circuits to have decided the issue agrees.  See Make the Rd. N.Y. v. Wolf, 962 F.3d 612, 635 (D.C. Cir. 2020) ("[Section 1252(f)] does not proscribe issuance of a declaratory judgment."); Alli v. Decker, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief."); Rodriguez v. Hayes, 591 F.3d 1105, 1119 (9th Cir. 2010) ("Section 1252(f) was not meant to bar classwide declaratory relief.").  But see Hamama v. Adducci, 912 F.3d 869, 880 n.8 (6th Cir. 2018) ("[B]oth parties agree . . . that the issue of declaratory relief is not before us. Even if it were before us, we are skeptical [the noncitizens] would prevail.").

referring to permanent injunctions and the word 'restrain' as referring to temporary injunctive relief (such as a stay)").  And while declaratory relief can sometimes have much the same practical effect as injunctive relief, it differs legally and materially.  "[A] declaratory judgment is a milder remedy" than an injunction; it "does not, in itself, coerce any party or enjoin any future action."  Ulstein Mar., Ltd. v. United States, 833 F.2d 1052, 1055 (1st Cir. 1987); accord Steffel v. Thompson, 415 U.S. 452, 466 (1974) (opining that in passing the Declaratory Judgment Act, "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction").  A declaratory judgment does not, for example, set the stage for a finding of contempt -- a distinction of special note in cases in which the government is a party.  We have recognized that because "[i]njunctions and declaratory judgments are different remedies," the latter may be "available in situations where an injunction is unavailable or inappropriate."  Ulstein Mar., 833 F.2d at 1055.

Moreover, Congress knows how to prohibit declaratory relief when it so chooses.  Indeed, the preceding subpart in section 1252 prohibits courts from granting "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)."  8 U.S.C. § 1252(e)(1)(A).  We are thus loath to insert a prohibition on declaratory relief into

section 1252(f), where Congress elected not to include one. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[W]hen 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983))).

To be sure, the Supreme Court has on occasion determined that declaratory relief is unavailable under a statute that only expressly prohibits injunctive relief. See, e.g., California v. Grace Brethren Church, 457 U.S. 393, 407-09 (1982). But, even after Grace Brethren, the Court has made clear that "declaratory relief may be available even though an injunction is not." Green v. Mansour, 474 U.S. 64, 72 (1985) (citing Steffel, 415 U.S. at 462). In occasionally withholding declaratory along with injunctive relief, the Court appears to be motivated by federalism concerns. See Green, 474 U.S. at 72 (discussing past cases); accord Steffel, 415 U.S. at 472 ("The only occasions where this Court has . . . found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications."). Because section 1252(f)(1) concerns federal courts' ability to enjoin the

- 21 -

operation of <u>federal</u> law, it does not implicate federalism concerns.

Absent such concerns, we conclude that declaratory relief remains available under section 1252(f)(1). In so holding, we reach the unremarkable conclusion that Congress meant only what it said -- and not what it did not say.[8]

**V.**

The district court also declared that "the immigration judge must evaluate the alien's ability to pay in setting bond above [the statutory minimum of] $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances." <u>Id.</u>[9] As we will explain, threshold considerations of the petitioners' standing and their failure to exhaust their claim administratively combine to eliminate the need

---

[8] The Supreme Court in <u>Jennings</u> left undecided whether declaratory relief "can sustain [a] class on its own" under Rule 23(b)(2). 138 S. Ct. at 851; <u>see</u> Fed. R. Civ. P. 23(b)(2) (providing that a class may be maintained if, inter alia, "declaratory relief is appropriate respecting the class as a whole"). The government failed to raise this issue; nor is it a type of jurisdictional issue that we must raise sua sponte.

[9] The petitioners also alleged, and the district court ruled, that the Constitution requires the government to prove that "no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community." <u>Brito</u>, 415 F. Supp. 3d at 271. The petitioners fail to explain how this claim differs from their claim that IJs must consider alternative conditions of release, so we treat the claims as one.

to consider the government's challenge to this declaration on the merits.

**A.**

We consider first the question of standing. In a class action, "federal courts lack jurisdiction if no named plaintiff has standing." Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019); see also In re Asacol Antitrust Litig., 907 F.3d 42, 48 (1st Cir. 2018) ("In a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim." (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:5 (5th ed. 2012))). To establish standing, a named plaintiff must "'clearly . . . allege facts demonstrating'" that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

Injury in fact is the "[f]irst and foremost" concern in the standing analysis. Id. (alteration in original) (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 103 (1998)). To prove injury, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

- 23 -

hypothetical.'" Id. at 339 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

The government claims the petitioners suffered no injury because they never asked their IJs to consider their ability to pay bond or alternatives to detention. We disagree. Detention without due process is the alleged injury. Detention is the quintessential liberty deprivation. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). It is too late in the day to dispute that an individual alleging that his detention resulted from constitutionally defective procedures has suffered an injury in fact sufficient to support Article III standing so as to challenge those procedures. Cf., e.g., Hamdi v. Rumsfeld, 542 U.S. 507 (2004); see also Mendia v. Garcia, 768 F.3d 1009, 1012 (9th Cir. 2014) ("Remaining confined . . . when one should otherwise be free is an Article III injury, plain and simple."). Whether the detained person requested more process at the time is a matter not of standing, but of exhaustion -- a subject to which we return below.

Satisfied that the petitioners have alleged an injury in fact, we move next to traceability and redressability. Traceability ensures that a plaintiff's injury is "causally connected" to the "'allegedly unlawful conduct' of which the

plaintiff[] complain[s]." <u>California</u> v. <u>Texas</u>, 141 S. Ct. 2104, 2114 (2021) (quoting <u>Allen</u> v. <u>Wright</u>, 468 U.S. 737, 751 (1984)). Redressability, in turn, concerns "the relationship between 'the judicial relief requested' and the 'injury' suffered." <u>Id.</u> at 2115 (quoting <u>Allen</u>, 468 U.S. at 753 n.19). Redressability requires the requested relief to redress a plaintiff's injury, thereby providing a safeguard against advisory opinions. <u>Id.</u> at 2116.

The analysis of these two standing requirements differs as applied to the two claimed procedural defects.

**1.**

As to the petitioners' ability to pay bond, the record is clear that no IJ ever got to the point of setting a bond amount as a condition for releasing any petitioner. Rather, in each instance, the IJ ruled that the petitioner did not establish an entitlement to be released on bond at all. As a result, the petitioners' alleged injuries are not fairly traceable to the IJs' failure to consider the noncitizens' ability to pay bond. Likewise, the petitioners' alleged injuries would not be redressed by ordering IJs to consider a noncitizen's ability to pay bond.

To be sure, the complaint alleges generally that noncitizens are "routinely" assessed "bond[s] set without consideration of their ability to pay." The complaint in turn cites to the affidavit of an immigration attorney, who states that

- 25 -

bond amounts have been rising, that an IJ told her that "an individual's ability to pay is not part of the consideration in setting the bond amount," and that some of her clients have remained detained due to their inability to pay the bond amount imposed. But even assuming these allegations show that some other potential class member has suffered injury traceable to an IJ's failure to consider her ability to pay, the relevant inquiry here is whether any of the class representatives pled facts sufficient to show their own standing. See Spokeo, 578 U.S. at 338 n.6. On this record, none has.

Nor is this a case in which the petitioners are entitled to a "relaxed" standing analysis that accounts for the difficulty of proving the harm caused by the denial of a procedural right. Cf. Lujan, 504 U.S. at 572 n.7 (noting that an individual "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy"). Rather, in each instance, the noncitizen's proceeding never got to the point at which the alleged right (to an affordable bond) was at issue, much less violated.

The petitioners also argue that they face possible future injury if they are again detained. But even assuming such re-detention transpires, each petitioner would only be injured if an IJ granted release but set too high a bond. The Supreme Court has expressed "reluctan[ce] to endorse standing theories that

require guesswork as to how independent decisionmakers will exercise their judgment." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 413-14 (2013).  We think that, in this case, the petitioners' multi-step theory of standing predicated on possible future developments is simply too attenuated to connect the claimed injury with the possible claimed procedural right.

Our conclusion is reinforced by evidence the petitioners presented to the district court regarding the median and mean bond amounts in the Boston and Hartford immigration courts during the period from November 1, 2018, to May 7, 2019.  Those statistics indicate that over half of the individuals for whom a bond was set paid the bond amount and were released within ten days.  It is, of course, possible that some of those individuals procured funds from sources beyond the scope of what an IJ would consider in evaluating a noncitizen's ability to pay in the first instance. Nevertheless, we think the statistics further destabilize the petitioners' theory of standing based on the possibility they will be re-detained and then assessed a bond they are unable to pay.

We therefore conclude that the petitioners lack standing to press their claim that the Due Process Clause requires an IJ to consider a noncitizen's ability to pay bonds exceeding $1,500.

**2.**

As to the contention that the IJs should have considered alternative conditions of release, traceability and redressability are closer questions.

The government argues that an IJ ought not consider a noncitizen's ability to pay or alternatives to detention if the IJ has determined that the noncitizen poses a danger to the community. The petitioners were found to pose such a danger. So, the government says, no harm, no foul: Even if the Due Process Clause required an IJ to consider alternatives to detaining a non-dangerous claimant, the IJ would not have reached that analysis in the petitioners' cases.[10] If the government is correct, the petitioners have once again failed to prove traceability and redressability.

But we are not so sure. The government appears to put the cart before the horse, for it is easy to see how conditions of release might shape an IJ's determination as to whether a noncitizen poses a flight risk or danger to the community. Cf. Fernandez Aguirre v. Barr, No. 19-CV-7048 (VEC), 2019 WL 4511933,

---

[10] The petitioners filed a supplemental affidavit stating that "immigration judges typically do not consider releasing a detainee on conditions" and that that they "rarely articulate consideration of an individual's suitability for alternative conditions of release" (emphases added). But the parties agree that the IJs in the petitioners' cases did not consider alternative conditions of release.

at *5 (S.D.N.Y. Sept. 18, 2019) (discussing court's earlier order that the IJ consider "whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that [the noncitizen] posed to the safety of the community . . . before concluding that detention was appropriate" (emphasis added)).  If due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the IJs in the petitioners' cases might well have reached different decisions as to the whether to release the petitioners on bond.  Indeed, the petitioners' own experiences illustrate this possibility:  The government ultimately agreed to release Celicourt and Avila Lucas if they paid bonds above the statutory minimum, and it released Pereira Brito subject to conditions that included electronic monitoring and home visits.

Ultimately, we need not resolve the standing question, for "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)). Here, another "threshold ground[]" prevents us from reaching the merits of the petitioners' alternatives-to-detention claim:  It is barred by the doctrine of administrative exhaustion.  Our explanation follows.

**B.**

As noted above, the government highlights the petitioners' undisputed failure to raise their alternatives-to-detention claims before their respective IJs. And while we think this fact sheds little light on the standing inquiry, it poses the question whether the petitioners failed to exhaust their administrative remedies before pressing that claim in federal court.[11]

Generally speaking, a plaintiff's failure to exhaust her administrative remedies precludes her from obtaining federal review of claims that would have properly been raised before the agency in the first instance. There are two species of exhaustion: statutory and common-law. See Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 174-76 (1st Cir. 2016). The former deprives a federal court of jurisdiction, while the latter "cedes discretion to a [federal] court to decline the exercise of jurisdiction." Id. at 174. In other words, "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress," but "courts have more latitude in dealing with exhaustion questions

---

[11] The petitioners allege that the government waived any challenge to exhaustion on appeal. But the government's briefing repeatedly and unequivocally asserted that the petitioners failed to ask their IJs to consider alternatives to detention. This is a classic exhaustion argument, and we decline to treat the issue as waived, especially because, as discussed below, the lack of exhaustion in this case impedes our ability to provide reasoned judicial review.

when Congress has remained silent." Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992) and Darby v. Cisneros, 509 U.S. 137, 153-54 (1993)).

We have held that at least some statutory exhaustion requirements apply to a noncitizen's petition for habeas corpus. See Sayyah v. Farquharson, 382 F.3d 20, 26 (1st Cir. 2004) (holding that 8 U.S.C. § 1252(d)(1)'s administrative exhaustion requirement applies in habeas proceedings where a noncitizen seeks review of his final removal order).[12] In this case, however, the government points us to no statutory exhaustion requirement that would govern the petitioners' pre-removal-order due process claims. We therefore assume that we find ourselves in the more permissive realm of common-law exhaustion. See Anversa, 835 F.3d at 174-75 ("bypassing the jurisdictional inquiry" where "the statutory exhaustion analysis [was] complex and uncertain, and its outcome

---

[12] In Sayyah, we suggested that even statutory exhaustion "while strict, admits of appropriate exceptions in extraordinary instances." Id. at 27. However, for reasons we will explain shortly, we do not think this case presents such an "extraordinary instance[]." We have also noted that "some claims of denial of due process . . . are exempt from [a statutory] exhaustion requirement because the [agency] has no power to address them." Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999). But the petitioners do not suggest that the agency was without power to consider their claims.

would have no bearing on the ultimate result" because common-law administrative exhaustion barred relief).

The petitioners do not argue that they exhausted their alternatives-to-detention claims below.[13]  Rather, citing a district court decision, the petitioners assert in a footnote that they were not required to exhaust administrative remedies.  We do not see why.  Exhaustion allows "an agency the first opportunity to apply [its] expertise" and "obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress."  Anversa, 835 F.3d at 175-76.  Here, the agency is better equipped than are the federal courts to determine what alternatives to detention an IJ has the authority to enforce.  Cf. Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *5 (D. Mass. Apr. 14, 2020) (declining to disturb an IJ's determination that "he would be unable to enforce [a noncitizen's] compliance with" use "of an ignition interlock device" as a condition of release).  And the petitioners' own submissions suggest that at least some IJs already consider alternatives to detention, indicating that the agency may be amenable to "provid[ing] appropriate redress" in the first instance.  Further, and most important for our purposes,

_____

[13] Nor do the petitioners claim to have raised the alternatives-to-detention argument before their respective IJs. Petitioners Pereira Brito and Avila Lucas do purport to have belatedly raised this claim before the BIA, but the BIA never reached the issue in either case:  It dismissed Pereira Brito's appeal as moot, and Avila Lucas withdrew his appeal.

- 32 -

the petitioners' failure to ask their own IJs to consider alternatives to detention means that they did not "creat[e] 'a useful record for subsequent judicial consideration.'" Anversa, 835 F.3d 167 (quoting McCarthy, 503 U.S. at 145). Such a record is especially important "in a complex or technical factual context" like this one. Id. (quoting McCarthy, 503 U.S. at 145).

All of these considerations weigh in favor of requiring exhaustion. And, because none of the petitioners remains detained at present, we see little on the other side of the ledger. Cf. Portela-Gonzalez, 109 F.3d at 77 (noting that a court may decline to apply common-law exhaustion where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim" (quoting McCarthy, 503 U.S. at 147)); Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986) ("[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest.").

As a result, we decline to review the petitioners' unexhausted alternatives-to-release claim.

**VI.**

For the foregoing reasons, we affirm the district court's declaratory judgment to the extent it declared that if the government refuses to offer release subject to bond to a noncitizen detained pursuant to 8 U.S.C. § 1226(a), it must either prove by

- 33 -

clear and convincing evidence that the noncitizen is dangerous or prove by a preponderance of the evidence that the noncitizen poses a flight risk. We otherwise <u>vacate</u> the district court's declaratory judgment and permanent injunction and <u>remand</u> for entry of judgment in accordance with this opinion.

**- Opinion Dissenting in Part Follows -**

**LIPEZ, <u>Circuit Judge</u>, dissenting in part.** I agree with all but one of the conclusions reached in the majority opinion: the determination that 8 U.S.C. § 1252(f)(1) bars the plaintiffs' request for class-wide injunctive relief. My disagreement is twofold. First, without analyzing the question themselves, my colleagues rely on Supreme Court dicta that they admit is "bereft of any supporting analysis" to "remov[e] from the district court's customary toolbox the option of grouping and adjudicating similar individual claims on a classwide basis." That reliance on dicta is untenable. Second, Congress's supposed rejection of all class-wide injunctive relief cannot be found in the language of § 1252(f)(1), and the provision's legislative history in fact reveals a more limited congressional objective. Therefore, I respectfully dissent from the injunctive relief portion of the majority decision.

## I.

The starting point for any issue of statutory construction is "the text itself." <u>Penobscot Nation</u> v. <u>Frey</u>, 3 F.4th 484, 490 (1st Cir. 2021); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Alvarez-Sanchez</u>, 511 U.S. 350, 356 (1994) ("When interpreting a statute, we look first and foremost to its text."). In so doing, we consider "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," <u>In re Fin. Oversight & Mgmt. Bd. for P.R.</u>, 919 F.3d 121,

128 (1st Cir. 2019) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)), and, if not, "we then turn to other tools of statutory construction," id.

This is the relevant language in § 1252(f)(1):

> [N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-32], . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). The government deduces from this language a prohibition against the class-wide injunctive relief plaintiffs seek in this case. Specifically, the government reads the reference to "an individual alien against whom proceedings . . . have been initiated" to limit injunctive relief to civil actions brought solely on behalf of "an individual," and, hence, to foreclose that form of relief in the context of a class action.

My colleagues cautiously observe with a double negative that the government's reading "is not without textual support." Yet, they go on to implicitly concede that § 1252(f)(1) lacks a plain and unambiguous meaning concerning the availability of class-wide injunctive relief when they acknowledge that the section "does not mention class actions by name." To resolve the statute's ambiguity, my colleagues identify "a trump card" for the government in Supreme Court dicta. Carefully examined, however, that dicta does not give the government a winning hand.

- 36 -

As the majority points out, on three occasions between 1999 and 2018, the Supreme Court -- when addressing other issues -- has mentioned in passing that § 1252(f)(1) bars class-wide injunctive relief. See Reno v. Am.-Arab Anti-Discrimination Comm. (AADC), 525 U.S. 471, 481-82 (1999); Nken v. Holder, 556 U.S. 418, 431 (2009) (citing AADC, 525 U.S. at 481-82); Jennings v. Rodriguez, 138 S. Ct. 830, 851 (2018) (quoting AADC, 525 U.S. at 481). I agree with the majority that we ordinarily should follow "considered dicta" of the Supreme Court. United Nurses & Allied Pros. v. NLRB, 975 F.3d 34, 40 (1st Cir. 2020) (internal quotation marks omitted). However, the majority admits that, in AADC and Nken, the Court's statement "might not by itself qualify as an example of 'considered dicta.'" My colleagues thus move on to attribute significance to the third iteration, in Jennings, because the reiteration of the AADC dictum there "occurred in the face of a dissenting opinion" specifically objecting to the majority's view. See Jennings, 138 S. Ct. at 851; id. at 875-76 (Breyer, J., with whom Ginsburg and Sotomayor, JJ., join, dissenting).[14] In such circumstances, my colleagues note, "the

--------

[14] In Jennings, the Supreme Court rejected the contention that several statutory provisions providing for the detention of noncitizens can be read to require bond hearings after six months of such detention and at six-month intervals thereafter. See 138 S. Ct. at 846-48. The Court did not decide whether the failure to provide such hearings might make the provisions unconstitutional in some circumstances. See id. at 851.

restatement of that dictum would seem to have been considered, even if bereft of any supporting analysis."

Yet, the opinion in Jennings does not support my colleagues' inference that the Court's dictum was the product of meaningful deliberation. The Court's quote from AADC comes shortly after it noted its "role as 'a court of review, not of first review,'" and stated its decision to remand the case for the Ninth Circuit to consider, inter alia, whether there was jurisdiction for the relief plaintiffs sought for their constitutional claims in light of § 1252(f)(1). 138 S. Ct. at 851 (quoting Cutter v. Wilkinson, 544 U.S. 709, 718 n.7 (2005)). But for the unelaborated reiteration of the AADC dictum, the passage in Jennings to which my colleagues give so much weight is nothing more than an instruction to the Ninth Circuit to consider in the first instance plaintiffs' constitutional claims now that the Court had rejected the plaintiffs' statutory claims on the merits. Furthermore, in line with the Court's disclaimer that its role is to review, not give a "first view," id., the Court simply does not address in any way Justice Breyer's explanation in his dissent of why § 1252(f)(1) does not bar class-wide injunctive relief to individuals who are all currently subject to immigration proceedings.

Indeed, the year after Jennings, the Court again sidestepped a question of class-wide injunctive relief under § 1252(f)(1). See Nielsen v. Preap, 139 S. Ct. 954, 962 (2019)

- 38 -

(stating that "we need not decide" whether the district court overstepped the bounds of § 1252(f)(1) when it "grant[ed] injunctive relief for a class of aliens that includes some who have not yet faced -- but merely 'will face' -- mandatory detention"); see also id. at 975 (Thomas, J., with whom Gorsuch, J., joins in part, concurring in part and concurring in the judgment) (noting that "the Court avoids deciding whether § 1252(f)(1) prevented the District Court's injunction here").  In the face of this history, I do not see how we can treat the issue of whether § 1252(f)(1) bars class-wide injunctive relief for individualized constitutional claims as having been resolved by the Supreme Court.  See Gayle v. Monmouth Cnty. Correc. Inst., 12 F.4th 321, 336 (3d Cir. 2021) (noting that the Supreme Court "has treated . . . as an open question" the availability of class-wide injunctive relief under § 1252(f)(1) for a class "composed entirely of individuals who are already in removal proceedings").

Moreover, even if the three "dicta" cases could be seen as hinting at the Supreme Court's perspective on the issue, it is inappropriate to premise the resolution of a difficult legal question on a prediction of what the Supreme Court will do when directly faced with that question in a future case.  Our task is to apply the precedential holdings and reasoning of the Supreme Court, not to "speculat[e] about what the Supreme Court might or might not do in the future."  Columbia Nat. Res., Inc. v. Tatum,

58 F.3d 1101, 1107 n.3 (6th Cir. 1995). Hence, I believe we should be deciding the injunctive relief question in the first instance, a responsibility that the majority explicitly eschews.[15] And, for the reasons given below, based on the statute's text and "other tools of statutory construction," In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d at 128, I agree with the Ninth Circuit's thoughtful analysis of this issue and its conclusion that § 1252(f)(1) does not foreclose the type of injunctive relief sought by the plaintiffs here. See Padilla v. ICE, 953 F.3d 1134, 1149-51 (9th Cir. 2020), cert. granted, judgment vacated on other grounds, 141 S. Ct. 1041 (2021)[16]; but see id. at 1152-53 (Bade, J., dissenting); Gayle, 12 F.4th at 336-37; Hamama v. Adducci, 912

---

[15] My colleagues properly undertake such an analysis concerning declaratory relief. They recognize that, in the same paragraph in Jennings in which the Supreme Court referenced injunctive relief, the Court "reserved the question whether the lower courts 'may issue only declaratory relief' under section 1252(f)(1)." Maj. Op., Section IV (quoting Jennings, 138 S. Ct. at 851). They then go on to resolve that question by looking -- correctly -- to the statutory language. They should have used the same approach with respect to injunctive relief.

[16] In Padilla, the Ninth Circuit upheld a preliminary injunction ordering the government "to provide bond hearings to a class of noncitizens who were detained after entering the United States and were found by an asylum officer to have a credible fear of persecution." 953 F.3d at 1139. The judgment was vacated and remanded for further consideration in light of DHS v. Thuraissigiam, 140 S. Ct. 1959 (2020), which held, inter alia, that the Due Process Clause does not require more process than Congress chooses to provide by statute for noncitizens who are subject to "expedited removal" because they were detained shortly after unlawful entry into the United States. See id. at 1981-83.

F.3d 869, 877-80 (6th Cir. 2018); <u>Van Dinh</u> v. <u>Reno</u>, 197 F.3d 427, 433 (10th Cir. 1999).[17]

## II.

There is no question that § 1252(f)(1) bars some forms of injunctive relief. After all, the section is titled "Limit on injunctive relief." The relevant question in this case, however, is what Congress meant when it expressly <u>permitted</u> courts to "enjoin or restrain the operation of" various immigration laws with respect to "an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1). The government's position, as previously described, is that the reference to "an individual alien" forecloses class actions that would adjudicate in a single lawsuit the rights of many individuals. But the statutory language also may sensibly be read to allow class-wide relief so long as "[e]very member of the class[]" -- as in this case -- is an "'individual alien against

---

[17] In concluding that § 1252(f)(1) bars class-wide relief, the dissent in <u>Padilla</u>, the court in <u>Gayle</u>, and the majority in <u>Hamama</u> emphasized, inter alia, the provision's reference to "an individual alien." <u>See</u> <u>Padilla</u>, 953 F.3d at 1156 (Bade, J., dissenting); <u>Gayle</u>, 12 F.4th at 336; <u>Hamama</u>, 912 F.3d at 877-78. As discussed below, that reference should not be read to foreclose relief to "individual alien[s]" provided through the mechanism of a class action. The court in <u>Van Dinh</u>, without analysis, summarily stated that "§ 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221-31 by any court other than the Supreme Court." 197 F.3d at 433.

whom proceedings . . . have been initiated.'" Jennings, 138 S. Ct. at 875 (Breyer, J., dissenting).

That alternative reading becomes the more reasonable one when the statutory text is considered both in context and against the backdrop of the provision's legislative history. As noted above, § 1252(f)(1) does not on its face bar class actions or class-wide injunctive relief. The omission of an explicit bar is particularly significant because the "neighboring subsection, § 1252(e)(1)(B), adopted at the same time by the same Congress, expressly prohibits class actions." Padilla, 953 F.3d at 1149. As the Ninth Circuit observed, "Congress knows how to speak unequivocally when it wants to alter the availability of class actions in immigration cases. It did not do so here." Id. at 1149-50[18]; see also Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[W]hen 'Congress includes particular language in one section of a statute but omits it in another section of the same

_____

[18] Section 1252(e)(1)(B) bars courts from "certify[ing] a class under Rule 23 . . . in any action for which judicial review is authorized under a subsequent paragraph of this subsection." The provision applies specifically to judicial review of orders issued under 8 U.S.C. § 1225(b), not to actions brought -- as in this case -- pursuant to 8 U.S.C. § 1226(a). I recognize that § 1252(e)(1)(B) is distinguishable from § 1252(f)(1) in that it addresses class actions generally, while § 1252(f)(1) is focused specifically on injunctive relief. See Padilla, 953 F.3d at 1154-55 (Bade, J., dissenting). However, the contrasting language in the two provisions is nonetheless relevant evidence that Congress knows how to expressly bar class-wide relief when it chooses to do so.

Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983))). Particularly given the express bar that was included in the adjacent provision, I do not see how we can justifiably "read into the text [of § 1252(f)(1)] . . . a broad but silent limitation on the district court's powers under Federal Rule of Civil Procedure 23," the rule governing class actions. Padilla, 953 F.3d at 1149; see also id. (quoting Califano v. Yamasaki, 442 U.S. 682, 700 (1979), for the proposition that, absent "a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court").

Like Justice Breyer, see Jennings, 138 S. Ct. at 875-76, the Ninth Circuit pointed out that reading § 1252(f)(1) to allow some forms of class-wide injunctive relief would not "render[] superfluous the word 'individual' in the phrase 'individual alien.'" Padilla, 953 F.3d at 1150. Rather, the requirement that injunctive relief address the claims of individuals would be met so long as "the district court has jurisdiction over the claim of each individual member of the class." Id. (quoting Califano, 442 U.S. at 701); cf. Brown v. Plata, 563 U.S. 493, 531 (2011) (concluding that a statute providing that "a remedy shall extend no further than necessary to

remedy the violation of the rights of a 'particular plaintiff or plaintiffs'" does not limit class-wide relief but requires that the "scope of the order . . . be determined with reference to the constitutional violations established by the specific plaintiffs before the court" (quoting 18 U.S.C. § 3626(a)(1)(A))).  The language of § 1252(f)(1) is thus most reasonably read to allow, rather than prohibit, use of class actions when -- as in this case -- the district court is faced with "a bevy of similar claims by individual noncitizens."  Maj. Op., Section III.

Indeed, that construction of the provision appears to be what Congress had in mind.  The statute's legislative history, as set forth by the Padilla court, see 953 F.3d at 1150-51, reveals an intention by Congress to eliminate the "preemptive challenges" to immigration laws that had been brought by organizational plaintiffs, while preserving the courts' "ability to 'issue injunctive relief pertaining to the case of an individual alien, and thus protect against any immediate violation of rights,'" id. (quoting H.R. Rep. No. 104-469(I), at 161 (1996)).  In other words, Congress's apparent objective was to limit the courts' authority to enjoin procedures adopted "to reform the process of removing illegal aliens from the U.S.," id. (quoting H.R. Rep. No. 104-469(I), at 161) (emphasis added), but not to prevent courts from remedying the ongoing violations of rights asserted by individual noncitizens, id. at 1151.

In this case, as the majority opinion notes, the district court certified two subclasses of already detained noncitizens who are either awaiting bond hearings or have been denied bond. The plaintiffs thus seek to vindicate their own rights as individuals. Section 1252(f)(1)'s "[l]imit on injunctive relief" was not directed at this type of effort to obtain individualized relief through a class action.

In sum, given the context and legislative history of § 1252(f)(1), the statute is most reasonably construed to allow the district court to provide injunctive relief collectively, through the mechanism of a class action, for the plaintiffs' individual claims. The Supreme Court's unexplained dicta is an inadequate justification for removing that important tool from the district court's "customary toolbox" for resolving plaintiffs' common claims. I therefore dissent from the majority's conclusion to the contrary.